# In the United States Court of Federal Claims

No. 02-126L
Filed December 13, 2004
TO BE PUBLISHED

| | | |
|---|---|---|
| CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | * | Alternative Dispute Resolution;<br>Doctrine of Laches;<br>Doctrine of *Res Judicata*;<br>Jurisdiction;<br>Statute of Limitations;<br>CFCR 11(c)(1)(B). |

**Dennis Charles Karnopp, Michael Louis Dillard**, Karnopp Peterson, L.L.P., Bend, Oregon, for plaintiff.

**John Howard Martin,** United States Department of Justice, Washington, D.C., for defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO ENTER NOVEMBER 3, 2004**
**JOINT PROPOSED REVISED SCHEDULING ORDER**

**BRADEN,** ***Judge***

On December 6, 2004, the NEW YORK TIMES published an article observing that "lists of cases [in federal courthouses across the country] have dragged on for months even years, often because a judge has failed to make a key ruling." Benjamin Weiser, *Judge's Decisions Are Conspicuously Late*, N.Y. TIMES, Dec. 6, 2004 at 1. The article makes a valid point, but the extraordinary large number of criminal and complex civil cases in certain areas of the country is a major source of this problem. Litigants also share responsibility for delay in many cases.

In the court's judgment, counsel for both parties in this case have not conducted this litigation in a manner that represents the best interests of their clients or respects the specific and limited jurisdiction of the court. *See United States* v. *King*, 395 U.S. 1, 3 (1969). Although this case was filed almost three years ago, counsel now jointly seek entry of a "revised" scheduling order that

would bifurcate the proceedings into two stages, where discovery in the "first stage" would not conclude until October 15, 2006, with "dispositive motions" to be filed by December 1, 2006, and no proposed trial date. As a practical matter, entry of the proposed scheduling order would allow the parties to engage in two additional years of discovery before the court's jurisdiction over a substantial portion of plaintiffs' claims is even ascertained. In the alternative, counsel have requested the opportunity to engage in Alternative Dispute Resolution ("ADR"). If the court lacks jurisdiction over certain of plaintiffs' claims, an ADR judge equally lacks jurisdiction to fashion a resolution that at some point will be presented to be entered as a final judgment. For these and other reasons discussed herein, the court denies the parties' joint motion to enter the November 3, 2004 Joint [Proposed] Revised Scheduling Order. The court reaffirms that the Scheduling Order entered by the court, with the consent of the parties, on August 3, 2004, continues in effect. Pursuant to this Scheduling Order, the defendant is expected by April 26, 2005 to file a motion to dismiss and/or for summary judgment based on a statute of limitations, *res judicata*, and any other jurisdictional defenses first asserted on July 15, 2002, or the court will enter an order directing the Government to show cause why such jurisdictional defenses should not be waived under the doctrine of laches. *See* CFCR 11(c)(1)(B).

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2002, the Confederated Tribes of the Warm Springs Reservation of Oregon ("the Tribes") filed a Complaint in the United States Court of Federal Claims seeking damages and an accounting, alleging that the United States ("the Government") breached fiduciary duties arising from federal treaties, statutes, regulations, and common law to exercise supervision, control, and management over the Tribes' trust funds and trust property. *See* Complaint ¶ 1 at 2.

On July 15, 2002, the Government filed an Answer alleging that any claims occurring prior to August 13, 1946 are barred by the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049, as amended. *See* Answer at 8-9 (First Defense). To the extent the Tribes are asserting claims that occurred prior to 1984, the Government contends that such claims are barred by the six year statute of limitations set forth in the Tucker Act, 28 U.S.C. § 2401. *See* Answer at 9 (Second Defense). In addition, the Government alleged that to the extent that the Tribes are asserting claims that they or their privies asserted or could have asserted in a prior adjudication wherein a final judgment was entered, those claims also are barred "by the principle of *res judicata* (claim preclusion and issue preclusion)." *See* Answer at 9 (Third Defense).

On August 12, 2002, a Protective Order was entered to allow discovery to proceed. On November 27, 2002, the Tribes filed an Amended Complaint limiting the scope of the litigation to July 1, 1972 through September 30, 1992.[1] On December 16, 2002, the Government filed an Answer

---

[1] On October 18, 2002, the Tribes also filed a Complaint in the United States District Court for the District of Columbia seeking an accounting for the periods "when the Government first became a trustee" until 1972 and from 1992 to date. *See The Confederated Tribes of Warm Springs Reservation of Oregon* v. *United States* (D.D.C.) Civil Action No. 02-02040. That case was

to the Amended Complaint reasserting defenses under the Tucker Act's six year statute of limitations and *res judicata* defenses. *See* Answer to Amended Complaint at 4-5. On December 17, 2002, in an Amended Joint Preliminary Status Report, the Government advised the court that the United States "*contemplated filing a summary judgment motion regarding . . . statute of limitations and other time bar issues*." (emphasis added.)

On December 18, 2002, the Government filed a Motion for a Voluntary Remand of this case to the Department of Interior to conduct an accounting. The Tribes opposed. On May 30, 2003, the court entered an Order denying the Government's motion and requested that the parties file an agreed proposed scheduling order on or before July 7, 2003.

On July 18, 2003, the Tribes filed a Motion for Proposed Scheduling Order representing to the court:

> With the entry of a scheduling order requiring the Government to complete document discovery by the end of this year, *this case will be ready for trial by the end of next year.* (emphasis added.)

On August 15, 2003, this case was transferred to the undersigned judge. The court convened a conference on September 24, 2003 to ascertain the status of entry of a scheduling order. The parties indicated they were working on a joint proposed scheduling order and shortly would proffer one to the court. Instead, the court received two competing scheduling orders.

On January 15, 2004, the court convened another status conference at which the Government advised the court that the Government:

> *would plan to file a motion for partial summary judgment asserting res judicata and statute of limitations claims because it's our assertion broadly that that should wipe out the tribe's claims up to the date of settlement, 1981.*

TR at 36 (emphasis added).

Following a discussion of the status of document discovery, wherein the Government advised the court that "we may be one-half to two-thirds of the way through," *see* TR at 39, the following exchanges occurred:

---

assigned to the Honorable Royce C. Lamberth. On December 20, 1992, the Government filed a motion to transfer Civil Action No. 02-02040 to the United States Court of Federal Claims. Judge Lamberth denied that motion on November 29, 2003. The Government filed a notice of appeal with the United States Court of Appeals for the Federal Circuit on November 25, 2003, but abandoned it in July 2004.

THE COURT: If you have a settlement agreement and your view is that the 1972 to 1981 claims are precluded as a matter of law, then it seems to me that motion should be before the Court before you're running around looking for old documents.

It sounds like you're looking for old documents, and then you're going to file your motion. You have a motion[?]

GOVERNMENT'S COUNSEL: Well, we didn't become aware of the prior litigation until relatively recently, and reconstructing the records has been a problem because putting together the government's best arguments has required us actually to go out to the Court of Claims archived records out in Maryland to review those records to figure out because there are some certain legal issues presented in the claim preclusion argument of what was litigated, et cetera, and to get into those issues, so factual development just simply of that motion has taken some time.

We have agreed with Plaintiff, and we had agreed with predecessor counsel too, to at least screen the documents to the 20-year period, 1972 to 1992. It may be that the Judge would side with the government that all claims are precluded or not.

THE COURT: I would like to take a look.

GOVERNMENT'S COUNSEL: Sure.

THE COURT: I don't know why the government didn't know [that] it was a party to . . . [a] settlement, but assuming that there is [such] a document it would seem to me that when you became aware of that it's important for you to bring that matter to the Court's attention. Otherwise really you're imposing . . . an expense both on the Plaintiff, as well as the government, that may not be necessary.

TR at 41-42.

* * *

GOVERNMENT'S COUNSEL: Well, *we anticipate having that [statute of limitations and res judicata] motion ready for the Court within the next month or two. We're putting the final touches on it and final factual investigation.*

That's one signature feature of Indian Tucker Act claims is that you go well back in time. There are these prior litigations and certain turning points, which in addition to this 1981 litigation which involved 20 some tribes, including four of the tribes that are involved in the present wave of litigation. Obviously as part of that you have the Indian Claims Commission.

TR at 44 (emphasis added).

* * *

> THE COURT: . . . I'm going to give you some time to get this worked out, and I really want you to do that because you have a better sense about what your needs are and other things. I don't want to enter an Order that I'm going to have to change, but I will impose one on the parties if you all can't come together[.]

TR at 56.

On July 7, 2004, the court convened a conference to consider a proposed Second Amended Complaint that the Tribes sought to be filed by leave and a scheduling order jointly proposed by the parties.

> THE COURT: I've looked at the [second] amended complaint, and it seems to me that the Tribe really ought to, under *Mitchell II*, at this point identify what specific federal statutes or regulations it's relying on.
>
> I would like to get that issue up and briefed on a motion to dismiss so that we get that issue straightened out before we do too much more document discovery.
>
> I think I may have mentioned this when we had one of our earlier discussions. I'm not sure anybody listened to me. You know, I don't know whether or not you . . . [can] satisfy *Mitchell*. If you don't, then there's no point in going through all this discovery.
>
> TRIBES' COUNSEL: Your Honor, we can, and actually in the original complaint I think there were quite a number of specific citations to various statutes.
>
> THE COURT: Well, your proposed second amended complaint doesn't have any of them in there.
>
> TRIBES' COUNSEL: No. I understand that, Your Honor.
>
> I think, though, that one of the realities of our case, I think we can do that, and if, as you've indicated, you want us to we can do that and will do that.
>
> However, there undoubtedly will be as a result of the discovery and the documents that we're in the process of obtaining, in our proposed second amended complaint we have laid out on the funds mismanagement phase of the case 14 specific areas that we allege there was funds mismanagement.

> THE COURT: And I don't have any problem with that, but I don't have any jurisdiction to assist you until we know what the specific statutes or regulations you're relying on are.
>
> TRIBES' COUNSEL: Okay.
>
> THE COURT: It seems to me under those circumstances the complaint needs to be amended to be specific. If the government disagrees, it's their burden to come forward and file a motion to dismiss so that we can get these jurisdictional issues up and out . . . . [Y]ou and the government propose doing this a year from now. It's not even a year from now. Two years from now or, in the government's position, three years from now. That is absolutely no way to run a railroad.

TR at 4-6.

* * *

> THE COURT: In your jurisdiction section of the first complaint, which is different than what you did in the second amended complaint, you cite a number of Acts, public laws. I don't know if you have any regulations in here or not. It doesn't look like it.
>
> None of those are in the second amended complaint in your jurisdiction paragraph, so at least at some point when someone drafted this complaint -- I don't know if it was you or not -- someone seemed to think that those issues were relevant under the jurisdictional question. They disappeared in the second amended complaint.
>
> TRIBES' COUNSEL: Your Honor, with you raising this issue we will look at it.
>
> THE COURT: Did you think I had jurisdiction the first time or the second time?
>
> TRIBES' COUNSEL: I didn't draft the original complaint.
>
> THE COURT: Well, that may be part of the problem. Maybe you need to talk to the lawyer who drafted the first complaint. He may have understood the concern I have.
>
> TRIBES' COUNSEL: I do understand your concern, and we'll deal with it. We gave them the draft amendment complaint in advance. They agreed to stipulate to filing it and to answer it.
>
> THE COURT: The government can't stipulate to whether I have jurisdiction or not.

TR at 10-11.

* * *

> GOVERNMENT'S COUNSEL: *The government is planning on filing a motion to dismiss the complaint, if it were to be filed. We've been planning arguments based primarily on statute of limitations to try to put some time limits on there.*
>
> Initially we had additional arguments, such as the Court suggests, testing whether each of the legal bases for the Plaintiff's claims meet the test set out in the *Navajo Nation* case as to whether the statute can be fairly interpreted.
>
> THE COURT: Well, obviously the roots lie in *Mitchell*. I didn't mention *Navajo*, but obviously it's clear to me that Plaintiff's counsel did not read the first complaint when it was amended. There's no other explanation for the jurisdictional paragraphs being so different.
>
> I would strongly suggest that you go back and look at them, that you do some research and amend the complaint in a way that's very specific about what your statutory and regulatory authority is.
>
> That is a jurisdictional issue . . . because unless I have that additional statutory authority that gives me the money mandating authority that establishes the trust for which, if there is a breach, damages can be awarded, I'm not the person you need to be talking to. I don't have any jurisdiction. That is very, very clear in *Mitchell*.
>
> Whether you agree or disagree about this, I think the proper procedure is to do a little legal research . . . then amend[.]
>
> [W]e want to address the statute of limitations motion at the same time. We don't need to get to three years out to do that. Either the complaint is [filed] . . . within the appropriate time period or not.

TR at 12-13 (emphasis added).

* * *

> THE COURT: A good portion of the complaint is beyond six years, so I'm going to need some reasons as to why it is that I should entertain those claims at this juncture[.]
>
> Now, the government tells me it has been busy . . . preparing for trial focused only on the events of 1972 to 1992.
>
> Do you have a statute of limitations issue in that timeframe?

GOVERNMENT'S COUNSEL: Yes.

THE COURT: You do?

GOVERNMENT'S COUNSEL: Well, we really have a statute of limitations on the asset mismanagement claims. We would argue that the Tribe can't pursue any claims occurring before 1998 on the asset mismanagement side or the non-monetary or the non-funds side of the complaint.

As far as the funds side, we would argue that the Court certainly can't entertain any claims occurring or existing for time periods prior to 1946, and then we would argue also that there are *res judicata* concerns with regards to claims for time periods prior to 1981.

THE COURT: And this is because of the other lawsuit that we had talked about --

GOVERNMENT'S COUNSEL: Yes.

THE COURT: I don't understand why you need three more years to bring those motions.

GOVERNMENT'S COUNSEL: We don't, Your Honor. This is an issue that Plaintiff's counsel and I have spent a lot of time discussing with each other, whether it makes sense to bring that motion now, *as I'm preparing and contemplating* to do, with the understanding that the Tribe will probably respond by saying that the Court should take Rule 56(f) perhaps and defer resolution of that until at least some further discovery helps the Tribe.

THE COURT: I certainly don't want to issue a Pretrial Order setting trial dates with these issues outstanding. I think that's inappropriate for me to do that.

TR at 15-18 (emphasis added).

* * *

TRIBES' COUNSEL: On the statute of limitation issue -- I mean, on the funds mismanagement the main basis on the statute, I think there's no reasonable statute issue that's been brought on that is that Congress has said in the Appropriations Act that the statute does not commence to run because there's never been an accounting provided.

THE COURT: But that's a legal question that has to be decided.

TRIBES' COUNSEL: I understand, but I think that's why the government has chosen not to bring any statute of limitations motion to dismiss on the funds claim.

The asset mismanagement claims, we are saying that's for a future portion of this case at a later date. That's the proposal that both sides have made to you, the structure of this case in the two phases, and to deal initially with the funds mismanagement phase only.

* * *

GOVERNMENT'S COUNSEL: *The government would still like to test the contours of the Plaintiff's claim by testing certain of these statutes*. As I look through the original complaint, there are certain statutory allegations which the government probably would contend don't embody money mandating duties.

THE COURT: Well, that would be an important thing to do, it seems to me, before three years expires.

GOVERNMENT'S COUNSEL: We hoped to do that when the time to file a response to the second amended complaint came due.

THE COURT: It says dispositive motions filed by. To me, that's a dispositive motion. Now, maybe you meant that as an outside date, but it certainly wasn't clear the way this was presented.

GOVERNMENT'S COUNSEL: No, Your Honor. That was an outside date. *I would hope to file a motion to dismiss on the statute of limitations and the failure to state a claim grounds in the timeframe to respond to the second amended complaint*.

THE COURT: July of this year?

GOVERNMENT'S COUNSEL: Yes, and then raise the *res judicata* issues once I have that motion finally put together, which will be several months from now due to the time it's taken for me to retrieve records from the Court of Claims Federal Records Center and cull through those records.

TR at 19-21 (emphasis added).

* * *

THE COURT: I'm not sure Plaintiff's counsel understands. In one sense I'm doing you a favor. It is much better off to get these issues up and out so you don't waste

> money pursuing claims that I'm going to kick out. You may appeal and somebody else may decide differently.
>
> TRIBES' COUNSEL: The problem is, Your Honor, we can deal with these issues as certainly the jurisdiction issue now if that's what you decide on the asset mismanagement, but then we're going to have to do some document production.
>
> We're going to have to deal with the request for documents, and in this case, as I know you understand, that is a huge problem and takes a lot of time.
>
> Even to deal I feel with the jurisdictional question and any motion, certainly a statute of limitations motion, we're going to have -- because the statute of limitations issue and argument and decision is different depending on the facts of the case and so we'll have to get into the facts of the asset mismanagement case, and we'll have to get documents in order to address even that threshold issue.
>
> THE COURT: And you've not done that yet?
>
> TRIBES' COUNSEL: No, because we haven't even talked about producing documents for asset mismanagement because the government and the Tribe both agreed that that claim, if it's ever actively pursued, would be pursued at a much later date because the funds mismanagement alone is a huge undertaking and a huge endeavor for the government and for the Tribe. The asset mismanagement is equally as large.
>
> To even begin to deal with -- I honestly don't see any benefit to the government or to the Court or to the Tribe of getting into that second phase even solely for purposes of addressing the jurisdictional issue.
>
> I mean, what would be the harm to the government or to the Court or anybody to simply deal with that issue at a later time? It's an entirely different issue than the funds mismanagement.

TR at 25-26.

* * *

> GOVERNMENT'S COUNSEL: From the government's perspective, I don't think that resolution of the six-year statute of limitation is dependent on any disputed facts.

TR at 27.

* * *

> THE COURT: Well, what I'm going to do is think about this and discuss it with [my law clerk], and we will put together a proposed Scheduling Order that does not give a trial date, but that gets rid of the jurisdictional questions I have relating to funds mismanagement.
>
> I certainly would stay the other claims and not permit discovery until we get the funds mismanagement case resolved. I want to think about this a little bit more though. I can see where some discovery may be necessary on the statute of limitations argument, but it seems to me that you can focus what that discovery is. I don't think that exercise has even begun.

TR at 28.

* * *

> THE COURT: I don't have anything else to raise today in the conference. I know what you all have done, and that's good, but I know I was very clear about some of these jurisdictional issues earlier. When I saw the [proposed] amended complaint, it became very clear that I cannot allow the case to proceed if you file that piece of paper.
>
> We'll try to get back to you next week with a proposed Order that at least deals with the funds mismanagement case and Ts up the jurisdictional questions or issues on both the *Mitchell* questions, as well as the statute of limitations arguments.
>
> We might be able to get those issues briefed and resolved in the next six months and then after that proceed to figure out what type of discovery is necessary and how to get that done.
>
> My inclination is not to try this case as late as the parties have proposed. I don't have a date right now, but I'm hoping we can get some resolution at least of the funds mismanagement aspect of the case.
>
> I can see where the Plaintiff would like to have some discovery on the statute of limitations issues in the non-funds mismanagement portion, so I think I'm going to not deal with that now and just stay that second portion of the case for all purposes until we get through the first case.
>
> That is at least in compliance with what both of you envisioned when preparing these papers for me today, so at least we have agreement on that. We have some

> disagreement about how that should be accomplished though and in what time period.
>
> If you have any additional thoughts you want to send in, please feel free to send them in a letter to [my law clerk] or myself. He will issue something in draft. We may have another telephone conference before I sign it.

TR at 29-31.

The month of July passed and no motion to dismiss and/or for summary judgment was filed by the Government. On August 3, 2004, the court entered a Joint Scheduling Order that was negotiated and agreed to by the parties. On August 26, 2004, as requested by the court, the Tribes filed a Second Amended Complaint providing citations to laws, treaties, regulations, written policies, and materials sufficient facially to establish the court's subject matter jurisdiction.

On October 12, 2004, at the request of the parties, the court convened a status conference wherein the parties suggested utilizing the Honorable Edward Leavy of the United States Court of Appeals for the Ninth Circuit as an ADR Judge in this case because of his work in effecting settlement of: *The Confederated Tribes of Warm Springs Reservation of Oregon* v. *United States* (United States Court of Federal Claims, Case No. 96-269L); *The Confederated Tribes of Warm Springs Reservation of Oregon* v. *United States* (United States Court of Federal Claims, Case No. 02-1476L); and *The Confederated Tribes of Warm Springs Reservation of Oregon* v. *United States* (D. Ore.) Case No. CV-02-1485-ST. During that conference, the court asked about the effect of the Government's statute of limitations issues on an ADR judge's jurisdiction.

> THE COURT: It also strikes me that you are not far enough into the process really to use ADR meaningfully, based on what my other experiences [have] been. I will just give you that observation.
>
> It strikes me that nothing was done on the case, essentially, until we got at least a scheduling order in place, and started getting some documents exchanged a year ago.
>
> TRIBES' COUNSEL: The Tribe has been acquiring many documents since essentially two months after this case was filed.
>
> THE COURT: Well, I am sure that you are being candid with your client about the fact that sending it to ADR doesn't mean that is going to resolve itself in ADR; and it may impose additional costs on the Tribe if the process is not productive.

TR at 29. The court took the parties' request for ADR under advisement and consulted with the Honorable Marian Horn, Chair of the ADR Committee of the United States Court of Federal Claims. Judge Horn informed the undersigned judge that there were several experienced judges in the court that could undertake an ADR assignment in this case.

On October 19, 2004, the Tribes' counsel sent a letter to the court describing Judge Leavy's background, forwarding a copy of his resume, and indicating that counsel for both parties spoke to Judge Leavy about his willingness to serve as ADR Judge in the case before this court and Judge Lamberth. That afternoon, the court contacted Judge Lamberth to ascertain whether he had decided to submit Civil Action No. 02-02040 to Judge Leavy for ADR. Judge Lamberth informed the undersigned judge that neither the Tribes' nor the Government's counsel had suggested using ADR or mentioned Judge Leavy in the proceeding before him. Subsequently, Judge Lamberth forwarded the court an October 20, 2004 Order, entered in Civil Action No. 02-02040, granting the Government's unopposed motion to enlarge the time in which to file an answer in that case to December 14, 2004, together with the docket sheet.

On November 3, 2004, the parties filed a Joint [Proposed] Revised Scheduling Order bifurcating the proceeding into two phases: Phase I dealing with the Trust Funds Mismanagement Claim; and Phase II dealing with the Non-Monetary Trust Asset Mismanagement Claim. Phase II is to be stayed until the completion of Phase I. The proposed schedule for Phase I provides that fact discovery will conclude on October 15, 2006, with motions to compel discovery on November 1, 2006. A post-discovery conference is set for November 23, 2006 and "dispositive motions" to be filed on December 1, 2006. No trial date was proposed.

On November 12, 2004, the court convened another conference to advise the parties that Judge Lamberth had no knowledge of their contact with Judge Leavy or representation to this court that they raised or intended to raise ADR in Civil Action No. 02-02040. In addition, the court advised the parties that it had substantial problems with the November 3, 2004 Joint [Proposed] Revised Scheduling Order and confirmed that the Government would not waive its jurisdictional defenses, even if the court allowed the parties to engage in ADR at this juncture.

## DISCUSSION

### A. Jurisdiction.

The Tucker Act, 28 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505, provide the requisite waiver of sovereign immunity for the Tribes to initiate this action. *See United States* v. *Navajo Nation*, 537 U.S. 488, 503 (2003) (quoting *Mitchell II*, 463 U.S. at 218-19). The Tucker Act grants this court jurisdiction over claims "against the United States founded . . . [on] any Act of Congress or any regulation of an executive department . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, does not provide the substantive law to be applied in this case, which is trust and contract law. *See Confederated Tribes of Warm Springs Reservation of Oregon* v. *United States*, 248 F.3d 1365, 1371 (Fed. Cir. 2001).

The Indian Tucker Act provides a basis of jurisdiction over "any claim" brought by:

> *any* tribe, band, or other *identifiable group of American Indians* residing within the territorial limits of the United States or Alaska *whenever such claim is one arising*

> *under the Constitution, laws or treaties of the United States*, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band, or group.

28 U.S.C. § 1505 (emphasis added). The Tribes' Second Amended Complaint, filed on August 26, 2004 now properly asserts a facial basis for the court's jurisdiction.

**B. Resolution Of The Parties' Motion For Entry Of A Joint [Proposed] Revised Scheduling Order.**

On July 15, 2002, the Tribes were first placed on notice of the Government's jurisdictional defenses. On July 18, 2003, the Tribes represented to the court that this case would be ready for trial by the end of 2004. On October 12, 2004, the court was advised that the Tribes had been acquiring and reviewing documents since April 2002. To date, the Tribes have filed no motion to compel production, so the court assumes that the Government's production has been satisfactory and that the Government's representation on January 15, 2004 that discovery was 50%–66% completed was accurate and that further progress has been made since that time.

On July 15, 2002, December 17, 2002, January 15, 2004, and July 7, 2004, the Government informed the court that it was planning and/or in the "final stages" of filing a motion to dismiss and/or for summary judgment based on statute of limitations, *res judicata* defenses, and other jurisdictional defenses.

The court has considered the November 3, 2004 Joint [Proposed] Revised Scheduling Order and Memoranda in Support in the context of all of the pleadings filed and proceedings conducted in this case to date. For the reasons discussed herein, however, the court has denied the parties' motion to enter the November 3, 2004 Joint [Proposed] Revised Scheduling Order. Accordingly, the August 3, 2004 Scheduling Order entered by the court, with the consent of the parties, continues in effect, pursuant to which the Government is expected to file a motion to dismiss and/or for summary judgment regarding previously asserted jurisdictional defenses by April 26, 2005, or the court will issue an order to show cause why those defenses are not waived under the doctrine of laches. In the event the Government files a motion to dismiss and/or for summary judgment by April 26, 2004, following the court's ruling on that motion, the court will convene a conference to discuss whether this case is appropriate for resolution by one of the ADR judges in the United States Court of Federal Claims.

## CONCLUSION

The Clerk of Court will enter an order consistent with this memorandum opinion and serve both the opinion and order on counsel for the parties, with a courtesy copy to the Honorable Royce C. Lamberth, United States District Court for the District of Columbia.

**IT IS SO ORDERED.**

s/**Susan G. Braden**
**Judge**