**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON,

Plaintiff,

v.

DIRK KEMPTHORNE, SECRETARY OF THE INTERIOR, DAVID W. ANDERSON, ASSISTANT SECRETARY OF INDIAN AFFAIRS, JOHN W. SNOW, SECRETARY OF THE TREASURY,

Defendants.

Case No. 02CV2040 (RCL)

**STIPULATION AND AGREEMENT FOR COMPROMISE, SETTLEMENT AND RELEASE AND [PROPOSED] ORDER**

This Stipulation and Agreement for Compromise, Settlement and Release and [Proposed] Order (the "Agreement") is made and entered into on this 26th day of September 2006 by and between the Confederated Tribes of the Warm Springs Reservation of Oregon (referred to hereinafter as the "Tribe"), on the one side, and the United States of America, the United States Departments of Interior and Treasury, the Secretaries of the Departments of Interior and Treasury, and the Interior Assistant Secretary of Indian Affairs on the other side (referred to hereinafter collectively as the "United States"). The Tribe and the United States (referred to hereinafter collectively as the "Parties") stipulate and agree as follows.

## RECITALS

1. The Parties are currently engaged in the following lawsuits:

A. Confederated Tribes Of The Warm Springs Reservation of Oregon v. United States, Case No. 02-126L (C.F.C.) ("C.F.C. Case")

B. Confederated Tribes Of The Warm Springs Reservation of Oregon v. Norton et al, Case No. 02-CV-02040 (D.D.C) ("D.D.C. Case").

The C.F.C. Case is an action for money damages that the Court has bifurcated into two phases: Phase I covers the Tribe's trust funds mismanagement claim, and Phase II covers the Tribe's non-monetary asset mismanagement claim, as each of those two claims are set forth in the Tribe's Second Amended Complaint, filed August 26, 2004, attached hereto as Exhibit A. The D.D.C. Case is an action for injunctive relief that seeks a court-ordered historical accounting of the Tribe's trust funds and assets.

2. Since the Fall of 2004, the Parties have been engaged in an alternative dispute resolution ("ADR") process regarding Phase I of the C.F.C. Case and the D.D.C. Case. In that process, the Parties engaged in productive discussions, exchanged significant information and financial data, and interviewed certain individuals. This ADR process was intended to address all of the Tribe's claims in Phase I of the C.F.C. Case as well as the monetary trust funds historical accounting claim in the D.D.C. Case.

3. A primary element of the ADR process was the Parties' development and implementation of Agreed Upon ADR Methodologies to analyze and quantify the amounts in dispute for the Tribe's claims in Phase I of the C.F.C. Case. By agreeing to develop and implement the specified ADR Methodologies, the parties did not thereby agreed to adopt or accept as binding the results obtained using the Agreed Upon ADR Methodologies. As a part of the ADR process, the United

States and the Tribe also executed a Cooperative Agreement in May 2005, which provided $250,000 in federal funding to the Tribe to support its involvement in the development and implementation of the Agreed Upon ADR Methodologies.

4. The Parties have negotiated the Agreement Governing ADR Proceedings attached hereto as Exhibit B. Although the parties have not executed the Agreement Governing ADR Proceedings, the parties have completed the process described therein, including the United States' satisfactory performance of the accounting methodologies regarding the Tribe's monetary trust funds (which are attached as Exhibit 1 to the Agreement Governing ADR Proceedings), and the Tribe's testing and monitoring of that performance.

5. On December 14 & 15, 2005, and on January 25 & 26, 2006, in Portland, Oregon, the Parties participated in a joint settlement conference regarding the D.D.C. Case and Phase I of the C.F.C. case which resulted in a proposed combined settlement of the D.D.C. Case and Phase I of the C.F.C. case. On January 26, 2006, the Tribal Council of the Confederated Tribes of the Warm Springs Reservation of Oregon approved the proposed terms of the combined settlement, subject to approval of a written settlement agreement.

6. For purposes of this Agreement, the Tribe's monetary trust funds (hereinafter referred to as "Trust Funds") includes all monetary funds held in trust by the United States, including any and all: monetary trust assets, income, funds held on deposit, invested funds, any Tribal-related monetary funds accounts that are established pursuant to federal legislation and that are maintained, managed, invested, or controlled by either Interior or Treasury, any proceeds-of-labor accounts; Tribal individual Indian money accounts; special deposit accounts; Treasury accounts (principal and interest); legislative settlement or award accounts, or judgment accounts. For the avoidance of doubt, it is the intention, understanding, and agreement of the Parties that non-monetary trust assets are, for purposes of this Agreement, separate and distinct from the

monetary trust funds that are derived from the sale, lease or use of non-monetary trust assets, whether such Trust Funds are denominated as trust monies, trust accounts, or trust account balances.

7. This Agreement is in the public interest. The Parties share a mutual interest in resolving costly and complex disputes that have been ongoing for four years and center on events occurring over the course of decades. The Parties also share a mutual interest in not incurring substantial expense and uncertainty to the public, the United States, and the Tribe in litigating over an accounting of Trust Funds or claims of monetary trust funds mismanagement.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1. Compromise and Settlement. This Agreement is the result of compromise and settlement between the Parties for the purpose of compromising disputed claims and avoiding the expense and risks of further litigation. This Agreement is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agencies, its agents, servants, or employees, and it is specifically denied that they are liable to the Tribe.

2. Cooperative Agreement. Within fourteen days of the entry of this stipulation as an Order, the Department of the Interior and the Tribe will execute a Cooperative Agreement, substantially in the form attached hereto as Exhibit C, providing additional funding up to $115,000 by the United States to the Tribe for the purpose of reimbursing the Tribe for certain of the Tribe's costs in testing and monitoring the performance of the Agreed Upon ADR Methodologies and providing the reports specified in the Cooperative Agreement.

3. Payment of Settlement Amount. The United States agrees to pay to the Tribe the sum of Twenty Million Dollars ($20,000,000.00) (the "Settlement Amount") as a compromise

settlement pursuant to the authority provided by 28 U.S.C. §§ 516 & 2414, which sum shall be in full, complete and final settlement and satisfaction of all claims released below in Paragraph Four (4) and adequate consideration for the other obligations herein. It is not the intent of the parties to have the entry of this Agreement as an order constitute a judgment, and such order shall not be construed as a judgment.

4. Mutual Release.

A. Except for the obligations and reservations contained in this Agreement, the Tribe and the United States hereby mutually, irrevocably and unconditionally release, forever discharge, waive, and covenant not to sue each other and each of their officers, agents, directors, supervisors, employees, representatives, and their successors and assigns, for and from any and all claims and liabilities of any kind or nature whatsoever, known or unknown, suspected or unsuspected, regardless of legal theory, for any damages, equitable or specific relief, based on facts occurring before the date of the Court's entry of this Joint Stipulation of Settlement as an Order, and which arise from either: (i) the United States' obligation to provide an accounting of the Tribe's Trust Funds, and Defendants' fulfillment of such obligation, (ii) the United States' alleged mismanagement of the Tribe's Trust Funds, or (iii) the United States' alleged failure to perform any legal obligation owed to the Tribe regarding the management of Trust Funds, including but not limited to any claims for mismanagement of Trust Funds that arise from the law cited in paragraphs 4 and 5 of the Second Amended Complaint in the C.F.C. Case or the Tribe's first claim for relief in that Complaint, attached as Exhibit A.

B. The scope of this release includes any and all claims that the United States breached its obligation, through the Effective Date of this Agreement, to perform an historical accounting of the Trust Funds of the Tribe or otherwise: (i) to account for the daily and annual balance of all

funds held in trust by the United States for the Tribe deposited or invested pursuant to the Act of June 24, 1938 (25 U.S.C. § 162a) as may be required by 25 U.S.C. §§ 162a or 4011 or other law; (ii) to report to the Tribe regarding all collections, disbursements, investments, and return on investments related to its accounts, as may be required by 25 U.S.C. § 4043 or other law; and (iii) to reconcile Tribal and individual Indian money accounts in which the Tribe has an ownership interest, as may be required by 25 U.S.C. §§ 4043 or 4044 or other law.

5. Attestation as to Account Balances. The Tribe accepts the Statements of Performance issued by the Office of the Special Trustee for American Indians (OST) of the Department of the Interior for the period ending December 31, 2005, as accurate and a full, true and correctly stated account. The balances for the Tribe's trust fund accounts shall be as stated in the Statements of Performance issued by OST for the period ending December 31, 2005 (attached hereto as Exhibit D).

6. Attestation and Waiver of Certain Future Claims.

A. Attestation regarding periodic Statements of Performance. The Tribe and the United States agree that the United States has no responsibility under present applicable federal statutes and regulations to account for and report to the Tribe regarding the Tribe's Trust Funds except for the requirements of the American Indian Trust Fund Management Reform Act of 1994, P.L. 103-412, 108 Stat. 4238 (hereinafter the "Reform Act of 1994"), and any regulations adopted thereunder.

(1) In satisfaction of its reporting responsibilities under Section 102 of the Reform Act of 1994 (codified in 25 U.S.C. § 4011) the United States presently provides the Tribe with the following:

(a) a periodic Statement of Performance on a quarterly, or upon request monthly, basis for all of the Tribe's trust funds held in trust pursuant to the Act of June 24, 1938 (25 U.S.C. § 162a), in the form attached to herein as Exhibit D. Conditional on the United States continuing to provide the Tribe with these reports, the Tribe attests that delivery of the foregoing satisfies the present reporting requirements of Section 102 of the Reform Act of 1994 (codified in 25 U.S.C. § 4011).

(b) a letter, on an annual basis, that relates to the United States' annual audit of all funds held in trust for the benefit of Tribes pursuant to the Act of June 24, 1938 (25 U.S.C. § 162a).

(2) In satisfaction of its reporting responsibilities under Section 303 (b)(2)(B)(ii) of the Reform Act of 1994 (codified in 25 U.S.C. § 4043 (b)(2)(B)(ii)), the United States presently provides the Tribe with periodic Statements of Performance which contain a report of the Tribe's trust fund investments and return on those investments, in the form attached hereto as Exhibit D. Conditional on the United States continuing, at a minimum, to provide the Tribe with these reports, the Tribe attests that delivery of the foregoing satisfies the present requirements of Section 303 (b)(2)(B)(ii) of the Reform Act of 1994 (codified in 25 U.S.C. § 4043 (b)(2)(B)(ii)).

(3) The Tribe desires to compare the yield of the Tribe's investments with the yields on other investment securities the Department of the Interior may purchase for the Tribe's Trust Funds under applicable federal law (the "Authorized Investments"). The parties acknowledge that such comparative yield information is available from sources believed to be accurate and equally available to both parties. These sources include publicly available print or online publications, such as *The Wall Street Journal*, *The New York*

*Times*, *The Washington Post*, *USA Today* and their respective websites; other subscription or free websites, such as bondpage.com, bondtrac.com, investinginbonds.com, tradebonds.com, and zionsbank.com; and subscription services such as Bloomberg, Lehman Brothers, and Merrill Lynch. These sources are named by means of example only, and the United States does not endorse or recommend any of the above-listed publications or subscription services. Further, investment strategy is a proper subject for discussion between the Tribe and Department of the Interior pursuant to 25 C.F.R. Part 115.

B. Required notice of objections regarding information in future Periodic Statements of Performance. After the date of the Court's entry of this Joint Stipulation of Settlement as an Order, the following provisions shall apply:

(1) Any objections that the Tribe has regarding the completeness or accuracy of information reported in a periodic Statement of Performance must be presented in writing within fifteen (15) months after the close of the calendar year in which the reported period occurs or fifteen (15) months after the Statement of Performance is delivered to the Tribe, whichever is later. The written objection shall include a reasonably particular description of the grounds for the objection. The written objection shall be presented to the Department of the Interior, by U.S. certified mail, at the following address:

United States Department of the Interior
Office of the Special Trustee for American Indians
4400 Masthead, N.E.
Albuquerque, NM 87109
Attn: Director of the Office of Trust Review and Audit

with a copy of the written objection provided to the Northwest Regional Director of the Northwest Regional Office of the Bureau of Indian Affairs. Within 60 days after

receiving the Tribe's written objection, the Department of the Interior will: (a) provide the Tribe with a revised Statement of Performance, (b) explain why the original Statement of Performance was correct, or (c) advise the Tribe that additional time is needed to respond thereto.

(2) The Tribe's authorizing officials are entitled to request additional information regarding its trust accounts at any time. The Tribe agrees to designate authorizing official(s) by Tribal Resolution, and to notify the Department of the Interior in writing of any new designation when said authorizing officials change. The United States shall make all reasonable efforts to provide the Tribe with the requested information, including making Department of the Interior personnel available to the Tribe for questions, within thirty (30) days of the date of receipt of such request.

(3) The information reported in a periodic Statement of Performance delivered by the Department of the Interior to the Tribe, to which no objection in writing is made to the Department of the Interior within fifteen (15) months after the close of the calendar year in which the reported period occurs or fifteen (15) months after the Statement of Performance is delivered to the Tribe, whichever is later, shall be conclusively presumed to be accurate and correct. A failure by the Tribe to make a timely written objection to information reported in a periodic Statement of Performance shall have no other legal effect or consequence except for this conclusive presumption and the conditional waivers of certain claims set forth in the following subparagraph (C); and this limitation of legal effect shall not apply to other acts and omissions of the parties with regard to any future claims or defenses of the Parties.

C. Conditional Waiver of Certain Claims and Covenant Not to Sue.

The following conditional waiver and covenant not to sue applies to possible future "Lag Time Claims", "Disbursement Claims" and "Productivity Claims", as those Phase I monetary trust funds mismanagement claim categories are described in Exhibit 1 to the Agreement Governing ADR Proceedings, attached hereto as Exhibit B. Such claims are hereinafter referred to as the "Future Lag Time, Disbursement and Productivity Claims." Excepting claims of fraud or gross negligence, the Tribe conditionally waives and covenants not to sue the United States, its agencies, agents or employees, for Future Lag Time, Disbursement and Productivity Claims, arising out of the management of the Tribe's monetary trust funds for a particular calendar year, if the Tribe does not first present an objection in writing to the Department of the Interior as specified in Paragraph 6(B)(1), regardless of any other superseding procedure as referred to in subparagraph 6(D) herein. This waiver and covenant not to sue is conditioned on the United States continuing in the future, at a minimum, to provide the Tribe with the reports specified above in subparagraph 6(A)(1) and 6(A)(2)

D. Procedures Superseded by Formal Regulation or Act of Congress.

The parties recognize and agree that nothing in this Agreement has the effect of altering existing federal laws or regulations governing the relationship and dealings between the Tribe and the United States. The parties agree that the provisions of Sections 6(B), except as specified in subparagraph 6(C), shall remain in effect only until the promulgation of regulations pursuant to 5 U.S.C. § 553 or the enactment of an Act of Congress which provides a different procedure for the Tribe to submit objection to

information contained in reports provided by the United States regarding the Tribe's funds held in trust by the United States for the Tribe pursuant to the Act of June 24, 1938 (25 U.S.C. § 162a). If such regulations are promulgated or such act of Congress is enacted, the applicable federal law or regulations shall supersede subparagraph 6(B) herein and such section shall no longer be of any force or effect except as specified in subparagraph 6(C). It is hereby acknowledged that it is the Tribe's position that the Tribe's agreement to the procedures set forth in section 6. A through C should not be used in the future by the United States as a precedent for seeking the enactment of statutes or the adoption of regulations imposing similar procedures upon other Indian tribes which may or may not be in a position to operate successfully under such procedures.

7. Confidentiality. The parties incorporate and agree to be bound by Section VIII. of the Agreement Governing ADR Proceedings, entitled "Confidentiality Agreement Provisions." Pursuant to Section VIII. F. of the Agreement, on January 20, 2006, the parties filed in the C.F.C Case a proposed Stipulated Protective Order Re Confidentiality of ADR-Mediation Communications. The C.F.C. Court has not entered that order. The parties agree to cooperate and renew their request that the C.F.C. Court enter the stipulated protective order.

8. Dismissal of D.D.C. Case. Within fourteen days after the Court's entry of this Joint Stipulation of Settlement as an Order, the Tribe will file a motion to dismiss the D.D.C. Case as follows: (i) The dismissal shall be with prejudice with respect to the Tribe's equitable or legal claim against the United States for an historical accounting of monetary trust funds, including any alleged violations by the United States and its agencies and officials of the statutes and laws cited in paragraph 4 above; (ii) The motion to dismiss shall be without prejudice with respect to

all other claims including the Tribe's equitable or legal claims against the United States for an historic accounting of non-monetary trust assets.

9. Partial Dismissal of the C.F.C. Case. Within fourteen days after entry of this Joint Stipulation of Settlement as an Order, the Tribe shall file a motion to dismiss its First Claim for Relief in its Second Amended Complaint in the CFC Case with prejudice and without costs.

10. Reservation of claims regarding non-monetary trust assets. The claims dismissed with prejudice and released in this Agreement do not include any damage claims that the Tribe may have against the United States for breach of any fiduciary duty in managing the Tribe's non-monetary trust assets, including but not limited to the Tribe's claims in its Second Claim for Relief in the C.F.C. Case or for an historical accounting of non-monetary trust assets. However, with respect to such excluded claims, the Tribe agrees not to seek any remedy for such claims that would require the United States to provide an historical accounting for monetary trust funds, including but not limited to an historical accounting for balances, credits, debits, receipts, disbursements, investments, or return on investments related to trust accounts and the monies contained therein.

11. Dispute Resolution. If there is a dispute over compliance with any term or provision of this Agreement, the disputing Party will notify the other Party in writing of the dispute. The Parties will attempt to work out the dispute informally before seeking judicial review by this Court. The disputing Party will engage the other Party in informal dispute resolution. During this informal dispute resolution period, which will not exceed 90 days (unless the Parties agree to an extension of the period), the Parties will meet as many times as both deem necessary to discuss and attempt to resolve the dispute. If the Parties are unable to resolve the dispute through informal dispute resolution, either Party may file a motion asking that this Court enforce the relevant term(s) and

provision(s) of this Agreement. The Parties stipulate and agree that the U.S. District Court for the District of Columbia shall retain jurisdiction to interpret and enforce this Settlement Agreement.

12. Remedy for non-payment. No term or provision of this Agreement will constitute or will be construed as a commitment or a requirement that the United States obligate or pay funds in contravention of the Antideficiency Act, 31 U.S.C. § 1341, and any other applicable law or regulation. If the United States is unable to perform its obligations under this Agreement because such payment is deemed to be in contravention of the Antideficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation, then this Agreement shall be deemed a nullity and the release and dismissals provided by the Tribe will be void.

13. Attorneys' Fees. Each Party shall be responsible for its own attorney's fees and costs incurred in the C.F.C. Case or the D.D.C. Case through the dates of the dismissals referenced above in paragraphs 8 and 9.

14. Governing Law. This Agreement shall be governed by the laws of the United States.

15. All Writings Contained Herein. This Agreement and attachments contain the entire agreement between the Parties concerning the terms of settlement, and there are no other agreements concerning such settlement except as set forth or incorporated by reference herein. No subsequent modifications or amendments of this Agreement shall be of any force or effect unless in writing, signed by the authorized representatives of the Parties.

16. Additional Documents. The Parties agree to execute and if necessary file with a court such additional documents as may be necessary to carry out the terms of this Agreement.

17. Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties' respective successors, transferees and assigns.

18. Headings Not Controlling. The section, paragraph, and subparagraph headings included herein are for reference only and are not a part of this Agreement. The headings shall not control or alter the meaning of this Agreement as set forth in the text.

19. Informed Consent. The Parties agree that this Agreement was negotiated in good faith and that the Parties were represented by competent counsel throughout the settlement negotiations leading up to and including the final execution of the Agreement. The Parties further agree that, prior to executing the Agreement, they were fully informed of the contents and consequences of the Agreement by their respective counsel and that each Party independently concluded that entering into the Agreement was a fair and reasonable disposition of the legal disputes described herein.

20. Approvals Obtained. The required approvals to enter into, and to execute this Agreement have been obtained from the Parties. The Parties now desire to amicably complete the settlement of the described claims and enter into this Agreement for that purpose.

21. Execution of the Agreement. Each of the signatories hereto hereby represents and warrants that he or she has the right, power, legal capacity and authority to execute into this Agreement and to bind the entity he or she represents to this Agreement and the obligations hereunder.

22. Effective Date. This Agreement shall become effective upon the date when execution of both parties has occurred. The party which executes last shall enter such Effective Date in the date space provided for in the first sentence of this Agreement.

EXHIBITS

Exhibit A: C.F.C. case Second Amended Complaint, filed August 26, 2004

Exhibit B: Agreement Governing ADR Proceedings, including ADR Methodologies

Exhibit C: Cooperative Agreement

Exhibit D: Statements of Account ending Dec. 31, 2005, for month of December

THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON

By: Stanley Buck Smith

Its: Vice-Chairman for Chairman of Tribal Council

Date: 5-31-2006

THE UNITED STATES OF AMERICA

By: [signature]

Its: Counsel of Record for the United States

Date: 26 Sept 2006

**APPROVED AS TO FORM:**

KARNOPP PETERSEN LLP

By Michael L. Dillard

Attorneys for The Confederated Tribes of the Warm Springs Reservation of Oregon and

Date: June 5, 2006

SUE ELLEN WOOLRIDGE
Assistant Attorney General

By John H. Martin
United States Department of Justice
Environment and Natural Resources Division
Natural Resource Section

Date: 26 SEPT 2006

Respectfully submitted this October 17, 2006.

SueEllen Wooldridge
Assistant Attorney General

John H. Martin
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resource Section
1961 Stout Street, Suite 800
Denver, CO 80292
john.h.martin@usdoj.gov

Attorney for the Defendants

Karnopp Petersen LLP

Michael L. Dillard
Karnopp, Petersen LLP
1201 NW Wall Street, Suite 300
Bend, OR 97701-1957 (tel.)
(541) 382-3011 (fax)
(541) 388-5410
mld@karnopp.com

Attorney for the Plaintiff

**[PROPOSED] ORDER**

ENTERED as an Order of this Court, on this ______ day of ____________, 2006.

HON. ROYCE C. LAMBERTH
United States District Judge

**Certificate of Service**

I hereby certify that on 17October2006 a copy of the foregoing **STIPULATION AND AGREEMENT FOR COMPROMISE, SETTLEMENT AND RELEASE AND [PROPOSED] ORDER** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ John H. Martin*
John H. Martin
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
1961 Stout Street, Suite 800
Denver, CO 80292
Tel: (303) 844-1383
Fax: (303) 844-1350
john.h.martin@usdoj.gov
Attorney for Defendants

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE CONFEDERATED TRIBES OF THE WARM SPRINGS RESERVATION OF OREGON, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 02-126L<br>Judge Susan Braden |

## SECOND AMENDED COMPLAINT

Plaintiff, by and through its undersigned attorney, for its second amended complaint, hereby alleges as follows:

### NATURE OF ACTION

1. This is an action by Plaintiff, the Confederated Tribes of the Warm Springs Reservation of Oregon ("Plaintiff", the "Warm Springs Tribe" or the "Tribe"), seeking money damages against Defendant United States of America ("Defendant" or the "United States") for breaches of trust duties in regard to the management by Defendant of the trust funds and non-monetary assets of the Warm Springs Tribe from 1855 to present. This action arises out of Defendant's breach of constitutional, statutory, regulatory, and common law trust duties owed to the Tribe.

### PARTIES

2. Plaintiff is a sovereign Indian tribe and is recognized as such by the United States. Plaintiff possesses all the legal rights and responsibilities afforded to federally recognized Indian tribes and is eligible for the special programs and services provided by United States to federally recognized Indian tribes.

3. The United States is charged by law with carrying out trust duties and responsibility in connection with the management and administration of the Tribe's trust assets, including both monetary and non-monetary trust assets.

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1505 (the Indian Tucker Act) and 1491 (the Tucker Act) in that the action involves a claim against the United States for money damages brought by an Indian tribe residing within the territorial limits of the United States, and arises under the Constitution, laws, treaties, or regulations of the United States or Executive Orders of the President, including, but not limited to:

a. Treaty with Tribes of Middle Oregon, June 25, 1855. 12 Stat. 963.

b. The Act of December 22, 1987, Pub. L. No. 100-202 and the Act of September 27, 1988, Pub. L. No. 100-446, which require the Bureau of Indian Affairs (the "BIA") to audit and reconcile tribal trust funds, and to provide tribes with an accounting of such funds.

c. The Act of October 23, 1989, Pub. L. No. 101-121, the Act of November 5, 1990, Pub. L. No. 101-512, and the Act of November 13, 1991, Pub. L. No. 102-154, all of which require the BIA to audit, reconcile, and certify through an independent party the results of the reconciliation of tribal trust funds as the most complete reconciliation of such funds possible, and to provide tribes with an accounting of such funds.

d. The Act of October 25,1994, (The American Indian Trust Fund Management Reform Act of 1994), Pub. L. No. 103-412, codified at 25 U.S.C. §§ 161a, 162a, and 4001-4061 (1997), pertinent sections of which require:

(1) Section 101: charges the Secretary of Interior ("Secretary") with a duty to provide periodic, timely reconciliations of tribal trust funds to assure the

accuracy of accounts, and charges the Secretary with a duty to determine accurate cash balances of tribal trust funds.

(2) Section 102(c): requires the Secretary to cause an annual audit of all tribal trust funds to be conducted.

(3) Sections 301 and 302: a Special Trustee for the American Indians is appointed to provide for more effective management of, and accountability for the proper discharge of trust responsibilities to Indian tribes, and to oversee and coordinate reforms within the Department of the Interior of practices relating to the management and discharge of such responsibilities.

(4) Section 303(b)(2)(A): charges the Special Trustee with a duty to monitor the reconciliation of trust accounts to ensure that the BIA provides account holders with a fair and accurate accounting of all trust funds.

(5) Section 303(d): charges the Special Trustee with a duty to provide such guidance as necessary to assist Department personnel in identifying problems and options for resolving problems.

(6) Section 304(2)(A) and (B): charges the Secretary with a duty to report to Congress, identifying for each tribal trust fund a balance reconciled as of September 30,1995. The Secretary's report must include an attestation by each tribe that the Secretary has provided the account holder with as full and complete an accounting as possible and that the tribe accepts the balance as reconciled by the Secretary, or that the tribe disputes the balance as reconciled, and if so, the report must provide an explanation why the tribe disputes the Secretary's balance.

(7) Section 304(3): charges the Secretary with a duty to provide a statement outlining the efforts the Secretary will undertake to resolve the tribe's dispute.

e. Other statutes that describe specifically and generally the United States' duties as a fiduciary in managing Plaintiff's trust funds: 25 U.S.C. §§ 111-148 (Disbursements of Moneys and Supplies); 25 U.S.C. §§ 151-166 (Deposit, Care and Investment of Indian Moneys); and selected statutes of Title 31 of the United States Code;

f. Other Statutes that describe specifically and generally the United States' duties in managing Plaintiff's timber and other non-monetary resources: selected statutes of Title 25 of the United States Code; and 33 U.S.C. §§ 3101-3120 (National Indian Forest Resources Management).

g. Regulations that describe specifically and generally the United States' duties in managing Plaintiff's trust funds: 25 C.F.R. Chap. I, Bureau of Indian Affairs, Department of Interior, Subchapter G--Financial Activities; and selected United States Treasury regulations;

h. Regulations that describe specifically and generally the United States' duties in managing Plaintiff's timber and other non-monetary resources are located in 25 C.F.R. Part 163 and other selected regulations promulgated by various United States agencies;

i. Written policies and manuals published by various United States Departments and Agencies that describe specifically and generally the United States' duties in managing Plaintiff's trust funds, timber and other non-monetary assets; and

5. This court also has jurisdiction over the subject matter of this action under a well-developed body of federal common law describing and defining the fiduciary relationship between the United States and Plaintiff.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

6. The Tribe occupies the Warm Springs Reservation of Oregon (the "Reservation") and is the beneficial owner of approximately 640,000 acres of land within the Reservation, title to which is held in trust by the United States for the benefit of the Tribe. There are additional lands outside of the Reservation that are held in trust by the United States for the benefit of the Tribe.

7. Land held in trust by the United States for the benefit of an Indian tribe is inalienable except as authorized by Congress. Congress has granted the Secretary of Interior authority to approve conveyances of interests in trust land, such as leases, easements, and rights of way. The Secretary of Interior exercises comprehensive regulatory control over the management of lands held in trust for Indian tribes, including those lands held in trust for the Warm Springs Tribe.

8. The lands held in trust for the Tribe include extensive forestland, grazing land and land valuable for hydro-power, geothermal-power and wind-power production. The lands held in trust for the Tribe contain a variety of valuable natural resource assets, including power production resources, timber, plants, water, fish, wildlife, oil, gas, rock, sand, gravel and minerals. The land held in trust for the Tribe and the natural resource assets contained on the land are of enormous economic importance to the Tribe. (The land held in trust for the Tribe and the natural resource assets contained on the trust land are hereinafter referred to as the Tribe's "non-monetary trust assets".)

9. For over one hundred years, the Secretary of the Interior has been charged by Congress with the duty to collect income derived from the Tribe's trust assets and to deposit such income in the United States Treasury and other depository institutions for the benefit of the Tribe. Congress has further directed that interest be paid on the Tribe's funds held in trust and required that such trust funds be invested. Pursuant to the duties and authority delegated by Congress, the Secretary of Interior exercises comprehensive control over the Tribe's trust funds.

(The funds held in trust, including income, funds held on deposit and invested funds, are hereinafter referred to collectively as the Tribe's "trust funds" or "monetary trust assets".)

10. Defendant has during the time period encompassed by this action exercised comprehensive statutory and regulatory control over the management of the Tribe's non-monetary and monetary assets. Defendant has approved leases and other conveyances of interests in trust lands of the Tribe. Defendant has managed the Tribe's forestlands and timber sales and approved compensation agreements for use of the Tribe's hydropower resources. Defendant has controlled, conducted and managed the collection, deposit, investment, and disbursement of the income derived from the Tribe's non-monetary trust assets, including, but not limited to, funds derived from timber sales, hydropower agreements and grazing leases.

11. Under longstanding constitutional, statutory and federal common law, and based upon the historic relationship between the United States and Indian tribes, the United States assumed the obligations and duties of a trustee by establishing and maintaining comprehensive regulatory control of tribal trust lands and resources and the funds derived therefrom. The United States owes a trust duty to the Tribe with regard to the Tribes' trust funds and non-monetary trust assets. In the exercise of that trust duty, the United States is held to the most exacting fiduciary standards.

## FIRST CLAIM FOR RELIEF

### (Breach of Trust Duty–Trust Funds Mismanagement)

12. The United States has violated its trust duty to Plaintiff with regard to its management of the Tribe's trust funds in one or more of the following particulars:

a. By failing to credit the Tribe's trust fund account for the total amount of income derived from the sale or lease of non-monetary trust assets, or otherwise derived from the management of the Tribe's non-monetary trust assets under Defendant's management and control;

b. By failing to credit the Tribe's trust fund account for amounts paid to it or due to it from other sources;

c. By failing to properly record all transactions pertaining to the Tribe's trust fund account;

d. By failing to implement effective cash management practices;

e. By failing to deposit the Tribe's trust funds in interest bearing accounts;

f. By failing to deposit the Tribe's trust funds in interest bearing accounts in a timely manner;

g. By holding the Tribe's trust funds in its treasury at inadequate interest rates;

h. By holding the Tribe's trust funds in various investments paying inadequate interest rates;

i. By utilizing the Tribe's trust funds for purposes not for the exclusive benefit of the Tribe;

j. By otherwise failing to invest and manage the Tribe's trust funds as a prudent trustee to earn the maximum income for the Tribe;

k. By applying the Tribe's trust funds in a manner not authorized by treaty or by express provisions of law;

l. By expending the Tribe's trust funds in an manner that did not exclusively benefit the Tribe;

m. By maintaining and operating a tribal trust fund system that is inadequate to properly and effectively manage tribal trust funds, and utilizing this system to manage the Tribe's trust funds;

n. By failing to maintain adequate systems and controls in the tribal trust fund system to guard against error and dishonesty;

o. By failing to maintain adequate records with regard to tribal trust funds, and failing to properly store tribal trust account documents so that an effective audit and reconciliation can be performed;

p. By failing to perform regular and accurate accountings of tribal trust funds and assets for the trust beneficiary, the Warm Springs Tribe.

13. As a result of Defendant's breaches of its trust duty with regard to the Tribe's trust funds, Plaintiff has been damaged in an amount exceeding $5.5 million, to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(Breach of Trust Duty–Non-Monetary Trust Asset Mismanagement)**

14. The United States has violated its trust duty to Plaintiff with regard to the Tribe's non-monetary trust assets that include, but are not limited to, the Tribe's forestlands and timber resources in one or more of the following particulars:

a. By failing to derive the maximum income for the sale or lease of the Tribe's non-monetary assets;

b. By failing to collect funds due and owing to the Tribe for the sale or lease of its non-monetary assets, or otherwise derived from the management of its non-monetary assets;

c. By failing to timely collect funds due and owing to the Tribe for the sale or lease of non-monetary trust assets, or otherwise derived from the management of the Tribe's non-monetary assets; and

d. By mismanaging the Tribe's forestlands and timber resources, including, but not limited to, failing to manage the Tribe's forestlands on a sustained-yield basis.

15. As a result of Defendant's breaches of its trust duty with regard to the Tribe's non-monetary trust assets, Plaintiff has been damaged in an amount exceeding $10 million, to be determined at trial.

**WHEREFORE**, Plaintiff Warm Springs Tribe prays for a judgment in its favor and against Defendant as follows:

1. On Plaintiff's FIRST CLAIM FOR RELIEF: For judgment in Plaintiff's favor and against Defendant in an amount to be determined at trial, not less than $5.5 million;

2. On Plaintiff's SECOND CLAIM FOR RELIEF: For judgment in Plaintiff's favor and against Defendant in an amount to be determined at trial, not less than $10 million;

3. To grant Plaintiff prejudgment interest, costs and attorney's fees in this litigation as may be provided by law; and

4. For such other relief as the Court deems equitable and just.

DATED this 25 day of August, 2004.

Michael L. Dillard, Attorney of Record
KARNOPP PETERSEN LLP
1201 N.W. Wall Street, Suite 300
Bend, Oregon 97701-1957
TEL: (541) 382-3011
FAX: (541) 383-3073
mld@karnopp.com
Of Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **SECOND AMENDED COMPLAINT** on:

John H. Martin
Department of Justice
Environment and Natural Resources Division
General Litigation Section
P. O. Box 663
Washington, D.C. 20044-0663
Fax: (202) 305-0506
Attorney For Defendant

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

☐ by mailing in a sealed, first-class postage-prepaid envelope, addressed to the last-known office address of the attorney, and deposited with the United States Postal Service at Bend, Oregon.

☐ by hand delivery.

☒ by sending via overnight courier in a sealed envelope.

☐ by faxing to the attorney at the fax number that is the last-known fax number for the attorney's office.

☐ by electronic service pursuant to LR 100.13.

DATED this 25 day of August, 2004.

KARNOPP PETERSEN LLP

[signature]

Michael L. Dillard, Attorney of Record
KARNOPP PETERSEN LLP
1201 N.W. Wall Street, Suite 300
Bend, Oregon 97701-1957
TEL: (541) 382-3011
FAX: (541) 383-3073
mld@karnopp.com
Of Attorneys for Plaintiff