# COOPERATIVE AGREEMENT

**PARTIES:** **THE CONFEDERATED TRIBES OF WARM SPRINGS RESERVATION OF OREGON** **("Tribe")**

**UNITED STATES DEPARTMENT OF INTERIOR, OFFICE OF HISTORICAL TRUST ACCOUNTING** **("OHTA")**

This Cooperative Agreement ("Agreement") is entered into by and between the Tribe and OHTA (collectively the "Parties"). In consideration of the mutual terms, covenants, and conditions of this Agreement, the Parties agree as follows.

## 1. BACKGROUND

**1.1** In the Spring of 2002, the Tribe filed a lawsuit against the United States in the United States Court of Federal Claims ("CFC Case"). The CFC Case is bifurcated into two phases: Phase I covers the Tribe's trust funds mismanagement claims, and Phase II covers the Tribe's non-monetary trust asset mismanagement claims.

**1.2** In the Fall of 2002, the Tribe filed a lawsuit against the Secretary of the Interior, Interior's Assistant Secretary of Indian Affairs, and the Secretary of the Treasury in the United States District Court, District of Columbia, Case No. 02CV2040-RCL, seeking injunctive relief in the form of a court ordered historical accounting of its trust funds and assets and a court ordered development of a system for the management and accounting of the Tribe's trust funds and assets ("D.C. District Court Case").

**1.3** Since the Fall of 2004, the Tribe and the United States have been engaged in an alternative dispute resolution process ("ADR Process") in an effort to develop and pursue a non-litigation approach to resolve both the D.C. District Court Case and Phase I of the CFC Case. The ADR Process focused on developing accounting methodologies to analyze the Tribe's Phase I claims in the CFC Case ("ADR methodologies"). The United States' funded development and implementation of these ADR methodologies constitute a mutually acceptable full and fair "in lieu" alternative to a full historical accounting of the Tribe's trust funds.

**1.4** The Secretary of the Interior created OHTA in 2001 to oversee the historical accounting of Individual Indian Money (IIM) accounts. Since that time, OHTA's charge has been broadened to include historical accounting for tribal trust accounts, including those of the Tribe.

**1.5** OHTA has been participating in the ADR Process with the Tribe. In order to advance the cooperative development and implementation of the ADR methodologies used in the ADR Process, OHTA has advised the Tribe that it has funds available in its Fiscal Year 2006 budget to fund certain activities of the Tribe in (1) monitoring and evaluating the United States' implementation of the ADR methodologies in the ADR Process and (2) developing schedules of yields of certain authorized investments for the Tribe's trust funds ("Authorized Investments").

**1.6** The ADR methodologies have been fully implemented and have been monitored and evaluated by the Tribe. Those methodologies and the Tribe's monitoring and evaluation of their implementation were a key component to the settlement and dismissal of the D.C. District Court Case and of the Phase I claims in the CFC Case.

## 2. PURPOSE

The purpose of this Agreement is to provide up to $115,000 in Federal Financial Assistance to the Tribe during Fiscal Year 2006 to support the Tribe's activities in monitoring and evaluating the United States' implementation of the ADR methodologies. The Parties recognize that the Tribe's work assisting in monitoring and evaluating the implementation of the ADR methodologies was a necessary and important component of the ADR Process. The Parties have mutually made a concerted good faith effort to use the non-litigation ADR Process to resolve both the D.C. District Court accounting claim and systems claim and Phase I of the CFC Case. The Parties acknowledge and affirm that this Agreement will provide the Tribe with funds in an amount up to, but not exceeding, $115,000 to support the Tribe's Fiscal Year 2006 costs (including indirect costs) for the Tribe to monitor and evaluate the United States' implementation of the ADR methodologies and for the Tribe to develop schedules of Authorized Investment yields. This Agreement does not in any way constitute a settlement of, or a commitment to settle in the future, any of the claims in the D.C. District Court Case for an historic accounting of non-monetary assets or any claims in Phase II of the CFC Case.

## 3. ADMINISTRATIVE

**3.1 Approval.** OHTA will make available up to $115,000 to the Tribe as specifically described in this Agreement.

**3.2 Program and Program Officer:** OHTA, Washington, DC.

**3.3 Recipient:** Tribe, Warm Springs Reservation, OR.

## 4. AUTHORITY AND SCOPE OF WORK

**4.1 Authority.** The authority for this Agreement includes Department of Interior, Environment, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-54 (August 2, 2005), and Secretarial Order 3231, Amendment No. 3, June 28, 2004.

**4.2 Scope of Work.** The scope of work covered by this Agreement includes the work that the Tribe has performed during Fiscal Year 2006 in monitoring and evaluating the implementation of the ADR methodologies and in developing schedules of Authorized Investment yields. As used in this Agreement, "reasonable and allocable costs" are defined as

those costs that the Tribe has incurred during Fiscal Year 2006 in monitoring and evaluating the implementation of the ADR methodologies and in developing schedules of Authorized Investment yields, including, but not limited to, (1) consultant fees paid to accountants and other experts engaged by the Tribe to monitor, evaluate, and test the implementation of the methodologies, and (2) travel and other costs incurred by such experts in connection with the methodologies development. All funds expended by the Tribe shall be subject to review and audit by OHTA to ensure that said costs are reasonable and allocable or otherwise allowable under this Agreement. Reasonable and allocable costs do not include litigation fees and costs such as fees paid to the Tribe's attorneys, even if such attorneys' fees were incurred in the development and implementation of the accounting methodologies and in the ADR Process.

**4.2.1 Tribal Expertise and Consultants.** Since at least October 1, 2005, the Tribe has employed three expert accounting consultants—Sandra K. Johnigan, Jim Parris, and Paul J. Gillis—and one accounting firm, Bland & Associates PC, to assist it in monitoring and evaluating the United States' implementation of the ADR methodologies in the ADR Process. Ms. Johnigan is the Tribe's lead expert accounting consultant. Ms. Johnigan directed and oversaw the monitoring work. The Tribe engaged Bland & Associates to provide accounting staff support to Ms. Johnigan for the purpose of testing approximately twenty percent (20%) of the transactions that the United States examined as part of the ADR Process. Mr. Parris and Mr. Gillis participated in the implementation of the accounting methodologies according to their respective area of expertise by time era; Mr. Parris focused on the years after 1966 while Mr. Gillis focused on 1966 and prior years. The Tribe also has employed Christopher James, Ph.D., as its investment expert consultant.

**4.2.2 Tribe's Activities and Deliverables.** The Tribe completed the following activities and provided the following deliverables:

**4.2.2.1** In September 2005, the Tribe delivered to the United States and OHTA a report prepared by Ms. Johnigan and Mr. Parris, entitled *Evaluation of the Arthur Andersen Procedures Related to Disbursement Transactions Recorded by the Bureau of Indian Affairs & Supporting Documentation During the Period July 1, 1972 through September 30, 1992*. That report meaningfully advanced the ADR Process and assisted the Parties in implementing and monitoring the ADR methodologies in Fiscal Year 2006.

**4.2.2.2** Ms. Johnigan and Bland & Associates reviewed the October 14, 2005 Chavarria, Dunne & Lamey LLC Interim Report and, after completing such reviews, issued written reports dated November 13, 2005, and November 4, 2005, respectively;

**4.2.2.3** Dr. James' research assistant prepared a schedule of rates of some of the Authorized Investments as part of his evaluation of the ADR Productivity Claim area.

**4.2.2.4** On October 26, 2005, Ms Johnigan and representatives from Bland & Associates met with representatives of Chavarria, Dunne & Lamey LLC ("CD&L") in Albuquerque, New Mexico. The purpose of the trip was to obtain an overview of the CD&L October 14, 2005 Report. In addition, CD&L representatives provided technical support to

Bland & Associates to facilitate the review of the supporting documents produced with the Report.

**4.2.2.5** Ms. Johnigan traveled to Portland and attended the December 14 and 15, 2005 mediation session. During the December 14 meeting, Ms Johnigan (and Bland & Associates by teleconference) met with CD&L representatives to discuss specific issues noted during the review of the CD&L November 28, 2005 Report. The information obtained assisted Bland & Associates in completing its December 22, 2005 Monitoring Report.

**4.2.2.6** Bland & Associates tested approximately twenty percent (20%) of the transactions that are part of the ADR methodologies by reviewing the reports, supporting documents, analysis, and results provided by the United States. Bland & Associates also tested the completeness of the universe of transactions from which the original sample was selected. Ms. Johnigan coordinated the test of the transactions and, along with Bland & Associates, issued periodic written reports of all tests and other reviews, including a final written report that was delivered on January 23, 2006.

**4.2.3 Tribe's Reasonable and Allocable Costs.** Attached as Appendix D to this Agreement is the schedule of the Tribe's costs that it has incurred. The Tribe has submitted invoices showing certain fees, costs, hours billed, cost per hour, and total costs. OHTA will review these invoices and any additional documentation provided and will determine what of these charges are reasonable and allocable and allowable under this Agreement. OHTA will then approve, up to $115,000, those charges that are determined to be reasonable and allocable and allowable under this Agreement. This sum will be processed for payment to the Tribe as soon as possible.

**4.3 Statement of Substantial Involvement.** OHTA has substantial involvement in this project through the joint development of the ADR methodologies, actual performance of accounting tasks, and the provision of information to the Tribe. The Tribe is responsible, among other things, for: (1) performing the activities supported by this Agreement, including the provision of the required personnel, facilities, equipment, supplies, and services, (2) providing Tribal documents to OHTA, (3) proposing and commenting on approaches, (4) attending settlement discussions and participating in the ADR Process, and (5) submitting the deliverables and other required reports and writings to the OHTA Program Manager. OHTA is responsible, among other things, for: (1) cooperating in the implementation of the ADR methodologies, (2) conducting project review meetings to ensure adequate progress and that the Tribe's activities accomplish program and project objectives, (3) attending settlement discussions and participating in the ADR Process, and (4) promoting and facilitating project activities.

## 5. DURATION

This Agreement shall be effective upon the execution of this Agreement by all signatories and shall thereafter include the period encompassed by the authorization of pre-award costs and end on September 30, 2006. The Period governing this Agreement is based upon the Federal Government's Fiscal Year (October 1 through September 30).

## 6. NOTICE

Any notice under this Agreement shall be in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested, or by facsimile. All notices shall be addressed to the Parties at the following addresses or at such other addresses as the Parties may direct in writing from time to time.

| | | |
|---|---|---|
| For Tribe | Name: | Charles R. Calica, Secretary-Treasurer<br>The Confederated Tribes of the Warm Springs Reservation of Oregon |
| | Address: | P.O. Box C<br>Warm Springs, OR 97761 |
| | Phone: | 541.553.3232 |
| | Fax: | 541.553.2236 |
| | E-mail: | jcalica@wstribes.org |
| | and | |
| | Name: | Michael L. Dillard<br>Karnopp Petersen LLP |
| | Address: | 1201 NW Wall Street, Suite 300<br>Bend, Oregon 97701 |
| | Phone: | 541.389.8409 |
| | Fax: | 541.383.3073 |
| | E-mail: | mld@karnopp.com |
| For OHTA | Name: | John H. McClanahan<br>Tribal Trust Accounting Program Manager<br>Office of Historical Trust Accounting<br>U.S. Department of the Interior |
| | Address: | 1801 Pennsylvania Ave., NW, Suite 500<br>Washington, D.C. 20006 |
| | Phone: | 202.327.5345 |
| | Fax: | 202.327.5375 |
| | E-mail: | John_McClanahan@ios.doi.gov |

| | | |
|---|---|---|
| For NBC | Name: | Lincoln S. Capstick III<br>Agreements Officer<br>National Business Center<br>U.S. Department of the Interior |
| | Address: | 7301 W. Mansfield Ave.<br>Denver, CO 80235 |
| | Phone: | 303 969 5032 |
| | Fax: | 303 969 5468 |
| | E-mail: | Lincoln_S_Capstick@nbc.gov |

Any notice shall be deemed to have been given on the earlier of (1) actual delivery or refusal to accept delivery, (2) the date of mailing by certified mail, or (3) the day facsimile delivery is verified.

## 7. OTHER PROVISIONS

**7.1 Assignment, Delegation, Subcontracting.** The Tribe may subcontract any part of the work that is required to perform the activities described herein. The Tribe shall be accountable for all costs incurred at any level and shall remain subject to review for reasonableness, allocability, and allowability. OHTA may obtain assistance from other entities, such as Interior's National Business Center, to assist with various non-substantive administrative tasks associated with this Agreement, including review of draw requests and processing of advance payments.

**7.2 Work Product and Reports.** Any work product of or reports generated by the joint implementation of the accounting methodologies, as part of the ADR Process, will be deemed to be the joint property of OHTA and the Tribe, and shall be made available to each party in a timely manner. This provision, however, does not in any way waive or affect (1) the attorney-client privilege or attorney work product doctrine protection that each party has with respect to the involvement of, or work done by, their respective legal counsel, or (2) with respect to OHTA, the deliberative process privilege.

**7.3 Payments:** The Tribe will present requests for payments in accordance with the Tribe's Budget, SF 424A, which is attached hereto as Appendix E, and with the Cost Principles for State, Local, and Indian Tribal Governments, OMB Circular A-87, and 43 CFR Part 12. The Tribe shall expend the Government-appropriated funds paid or advanced to it exclusively to fulfill the purpose of this Agreement. The Tribe will submit an SF 270 and OHTA will then process the SF 270 for payment. OHTA reserves the right to decline payment for any cost that is deemed unreasonable, unallocable, or unallowable.

**7.4 Annual Audit.** The Tribe shall provide OHTA with a copy of the annual independent audit that may be conducted on the Tribe's program administration and function compliance pursuant to OMB Circular A-133 or otherwise.

**7.5 Certified Public Accountants.** In order to ensure appropriate performance of the activities under this Agreement, at least one person retained by the Tribe shall be a Certified Public Accountant (CPA) who maintains a current license in the state where the CPA maintains his or her principal office, and complies with the corresponding and continuing professional education requirements. All monitoring reports and other monitoring deliverables issued under this Agreement on behalf of the Tribe shall be signed by a CPA.

**7.6 Attached Documents.** The following documents are attached hereto and incorporated herein by reference as though fully set forth:

**7.6.1** Appendix A, Application for Federal Assistance SF-424

**7.6.2** Appendix B, Assurances – Non-Construction Programs, SF 424B

**7.6.3** Appendix C, U.S. Department of the Interior, Certifications for Federal Assistance

**7.6.4** Appendix D, Tribe's Schedule of Costs

**7.6.5** Appendix E, Tribal Budget, SF 424A

**7.6.6** Appendix F, SF269 Financial Status Report (Long Form)

**7.7 Requirements.** The Tribe shall comply with the following requirements which are incorporated herein by reference as though fully set forth:

**7.7.1** All costs, to be paid for by the Government, must be reasonable, allocable and allowable as outlined in guidelines published in the Office of Management and Budget Circular Cost Principles for State, Local, and Indian Tribal Governments, OMB Circular A-87;

**7.7.2** Grants and Cooperative Agreements with State and Local Governments, OMB Circular A-102; and

**7.7.3** 43 CFR Part 12, Administrative and Audit Requirements and Cost Principles for Assistance Programs (all subparts that are applicable to State and Local Governments).

**7.8 Travel.** All official travel by the Tribe and its consultants as deemed necessary by the Tribe's Secretary-Treasurer shall be at standard coach fares or less. The Tribe's travel policies must be consistent with current U.S. Government travel regulations, as published in the Federal Register. All travel shall be performed on a reimbursable basis. Receipts and other supporting documentation shall be provided to the Tribe when invoicing for travel and retained by the Tribe. Payment of travel, per diem, and other expenses shall be considered reasonable, allocable, and allowable only to the extent that such costs do not exceed on a daily basis the maximum per diem rates in effect at the time set forth in the Federal Travel Regulations, prescribed in the General Service Administration, available online at http://policyworks.gov/org/main/mt/homepage/mtt/perdiem/travel.htm.

**7.9 Financial Cost/Reporting.** The Tribe will expend the U.S. Government-appropriated funds advanced to it exclusively to fund the scope of work set forth in Section 4.2 of this Agreement. The Tribe will provide to OHTA quarterly reports via SF 269, or as otherwise agreed in writing, within 30 calendar days after the end of each calendar quarter noting each specific cost incurred for specific tasks accomplished during the reporting period. The Tribe will provide OHTA with an annual financial report via SF 269, or as otherwise agreed in writing, within 90 days after the expiration or termination of this Agreement.

**7.10 Modification.** No supplements, modifications, waivers, or terminations of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.

**7.11 Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signed original counterparts shall be delivered to OHTA for retention in the file with copies provided for all Parties.

**7.12 Authority.** The signatories to this Agreement represent and warrant that they have the requisite authority and approval to enter into this Agreement and that this Agreement shall be binding on the Parties.

**7.13 Termination of Agreement.** Either OHTA or the Tribe may terminate this Agreement upon written notification with 30 days' advance notice. In the event this Agreement is terminated, funds allocated for tasks not yet performed shall revert to OHTA. Tasks which have been performed prior to notice of termination shall be paid out of funds advanced under this Agreement. With the exception of activities necessary to terminate this Agreement or to preserve or compile useful information developed hereunder, no activities will occur once the Parties have notice of termination.

**7.14 Disputes.** The Agreements Officer is the final decision maker on any administrative dispute between the Tribe and OHTA under this Cooperative Agreement. However, the parties expressly acknowledge that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal trust fund accounts and that the Agreements Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e, resolution of trust fund accounting and other issues as they may arise). The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this agreement.

**7.15 Reporting Requirements.** The Tribe shall use the SF 269, Financial Status Report (Long Form) (Appendix F) in the applicable quarter and at the end of the year to report the status of funds for all non-construction projects or programs.

## ACCEPTANCE

The foregoing Agreement among the Tribe and OHTA is accepted as evidenced by the signatures below.

**TRIBE:** **THE CONFEDERATED TRIBES OF THE WARM SPRING RESERVATION OF OREGON**

______________________________ ________________

Charles R. Calica, Secretary-Treasurer Date

**OHTA** **OFFICE OF HISTORICAL TRUST ACCOUNTING**

______________________________ ________________

Bert T. Edwards, Executive Director Date

Version 7/03

**APPLICATION FOR FEDERAL ASSISTANCE**

| | | | |
|---|---|---|---|
| **TYPE OF SUBMISSION:** Application | Pre-application | **2. DATE SUBMITTED** ______, 2006 | Applicant Identifier N/A |
| ☐ Construction | ☐ Construction | **3. DATE RECEIVED BY STATE** | State Application Identifier |
| ☑ Non-Construction | ☐ Non-Construction | **4. DATE RECEIVED BY FEDERAL AGENCY** | Federal Identifier |

**5. APPLICANT INFORMATION**

| | |
|---|---|
| Legal Name: Confederated Tribes of the Warm Springs Reservation of Oregon | **Organizational Unit:** Department: Secretary-Treasurer |
| Organizational DUNS: 041266073 | Division: |
| **Address:** Street: PO Box C, 1233 Veterans Street | **Name and telephone number of person to be contacted on matters involving this application (give area code)** Prefix: Mr. First Name: Charles |
| City: Warm Springs | Middle Name R. |
| County: Jefferson | Last Name Calica |
| State: Oregon Zip Code 97761 | Suffix: |
| Country: U.S.A. | Email: jody.calica@wstribes.org |
| **6. EMPLOYER IDENTIFICATION NUMBER** *(EIN)*: 93-0383363 | Phone Number (give area code) 541-553-3232; Fax Number (give area code) 541-553-2236 |
| **8. TYPE OF APPLICATION:** ☑ New ☐ Continuation ☐ Revision<br>If Revision, enter appropriate letter(s) in box(es) (See back of form for description of letters.) ☐ ☐<br>Other (specify) | **7. TYPE OF APPLICANT:** (See back of form for Application Types)<br>K<br>Other (specify) |
| | **9. NAME OF FEDERAL AGENCY:** |
| **10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE NUMBER:** ☐☐-☐☐☐<br>TITLE (Name of Program): | **11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT:** |
| **12. AREAS AFFECTED BY PROJECT** *(Cities, Counties, States, etc.)*: Warm Springs Reservation, Jefferson and Wasco Counties, Oregon | |
| **13. PROPOSED PROJECT** Start Date: 10-01-2005; Ending Date: 9-30-2006 | **14. CONGRESSIONAL DISTRICTS OF:** a. Applicant 2nd; b. Project 2nd |

| **15. ESTIMATED FUNDING:** | |
|---|---|
| a. Federal | $ 115,000 .00 |
| b. Applicant | $ .00 |
| c. State | $ .00 |
| d. Local | $ .00 |
| e. Other | $ .00 |
| f. Program Income | $ .00 |
| g. TOTAL | $ 115,000 .00 |

**16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?**

a. Yes. ☐ THIS PREAPPLICATION/APPLICATION WAS MADE AVAILABLE TO THE STATE EXECUTIVE ORDER 12372 PROCESS FOR REVIEW ON

DATE:

b. No. ☑ PROGRAM IS NOT COVERED BY E. O. 12372

☐ OR PROGRAM HAS NOT BEEN SELECTED BY STATE FOR REVIEW

**17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?**

☐ Yes If "Yes" attach an explanation. ☐ No

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION/PREAPPLICATION ARE TRUE AND CORRECT. THE DOCUMENT HAS BEEN DULY AUTHORIZED BY THE GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE ATTACHED ASSURANCES IF THE ASSISTANCE IS AWARDED.**

| a. Authorized Representative | | |
|---|---|---|
| Prefix Mr. | First Name Charles | Middle Name R. |
| Last Name Calica | | Suffix |
| b. Title Secretary-Treasurer | | c. Telephone Number (give area code) 541-553-3232 |
| d. Signature of Authorized Representative | | e. Date Signed ______, 2006 |

Previous Edition Usable
Authorized for Local Reproduction

Standard Form 424 (Rev.9-2003)
Prescribed by OMB Circular A-102

Appendix A
Page 1 of 2

**INSTRUCTIONS FOR THE SF-424**

ublic reporting burden for this collection of information is estimated to average 45 minutes per response, including time for reviewing ıstructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0043), Washington, DC 20503.

**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE OFFICE OF MANAGEMENT AND BUDGET. SEND IT TO THE ADDRESS PROVIDED BY THE SPONSORING AGENCY.**

This is a standard form used by applicants as a required face sheet for pre-applications and applications submitted for Federal assistance. It will be used by Federal agencies to obtain applicant certification that States which have established a review and comment procedure in response to Executive Order 12372 and have selected the program to be included in their process, have been given an opportunity to review the applicant's submission.

| Item: | Entry: | Item: | Entry: |
|---|---|---|---|
| 1. | Select Type of Submission. | 11. | Enter a brief descriptive title of the project. If more than one program is involved, you should append an explanation on a separate sheet. If appropriate (e.g., construction or real property projects), attach a map showing project location. For preapplications, use a separate sheet to provide a summary description of this project. |
| 2. | Date application submitted to Federal agency (or State if applicable) and applicant's control number (if applicable). | 12. | List only the largest political entities affected (e.g., State, counties, cities). |
| 3. | State use only (if applicable). | 13 | Enter the proposed start date and end date of the project. |
| 4. | Enter Date Received by Federal Agency<br>Federal identifier number: If this application is a continuation or revision to an existing award, enter the present Federal Identifier number. If for a new project, leave blank. | 14. | List the applicant's Congressional District and any District(s) affected by the program or project |
| 5. | Enter legal name of applicant, name of primary organizational unit (including division, if applicable), which will undertake the assistance activity, enter the organization's DUNS number (received from Dun and Bradstreet), enter the complete address of the applicant (including country), and name, telephone number, e-mail and fax of the person to contact on matters related to this application. | 15 | Amount requested or to be contributed during the first funding/budget period by each contributor. Value of in kind contributions should be included on appropriate lines as applicable. If the action will result in a dollar change to an existing award, indicate only the amount of the change. For decreases, enclose the amounts in parentheses. If both basic and supplemental amounts are included, show breakdown on an attached sheet. For multiple program funding, use totals and show breakdown using same categories as item 15. |
| 6. | Enter Employer Identification Number (EIN) as assigned by the Internal Revenue Service. | 16. | Applicants should contact the State Single Point of Contact (SPOC) for Federal Executive Order 12372 to determine whether the application is subject to the State intergovernmental review process. |
| 7. | Select the appropriate letter in the space provided.<br>A. State<br>B. County<br>C. Municipal<br>D. Township<br>E. Interstate<br>F. Intermunicipal<br>G. Special District<br>H. Independent School District<br>I. State Controlled Institution of Higher Learning<br>J. Private University<br>K. Indian Tribe<br>L. Individual<br>M. Profit Organization<br>N. Other (Specify)<br>O. Not for Profit Organization | 17. | This question applies to the applicant organization, not the person who signs as the authorized representative. Categories of debt include delinquent audit disallowances, loans and taxes. |
| 8. | Select the type from the following list:<br>• "New" means a new assistance award.<br>• "Continuation" means an extension for an additional funding/budget period for a project with a projected completion date.<br>• "Revision" means any change in the Federal Government's financial obligation or contingent liability from an existing obligation. If a revision enter the appropriate letter:<br>A. Increase Award B. Decrease Award<br>C. Increase Duration D. Decrease Duration | 18 | To be signed by the authorized representative of the applicant. A copy of the governing body's authorization for you to sign this application as official representative must be on file in the applicant's office. (Certain Federal agencies may require that this authorization be submitted as part of the application.) |
| 9. | Name of Federal agency from which assistance is being requested with this application. | | |
| 10. | Use the Catalog of Federal Domestic Assistance number and title of the program under which assistance is requested. | | |

SF-424 (Rev. 7-97) Back

Appendix A
Page 2 of 2

OMB Approval No. 0348-0040

# ASSURANCES - NON-CONSTRUCTION PROGRAMS

. ublic reporting burden for this collection of information is estimated to average 15 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0040), Washington, DC 20503.

**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE OFFICE OF MANAGEMENT AND BUDGET. SEND IT TO THE ADDRESS PROVIDED BY THE SPONSORING AGENCY.**

**NOTE:** Certain of these assurances may not be applicable to your project or program. If you have questions, please contact the awarding agency. Further, certain Federal awarding agencies may require applicants to certify to additional assurances. If such is the case, you will be notified.

As the duly authorized representative of the applicant, I certify that the applicant:

1. Has the legal authority to apply for Federal assistance and the institutional, managerial and financial capability (including funds sufficient to pay the non-Federal share of project cost) to ensure proper planning, management and completion of the project described in this application.

2. Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, through any authorized representative, access to and the right to examine all records, books, papers, or documents related to the award; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives.

3. Will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain.

4. Will initiate and complete the work within the applicable time frame after receipt of approval of the awarding agency.

5. Will comply with the Intergovernmental Personnel Act of 1970 (42 U.S.C. §§4728-4763) relating to prescribed standards for merit systems for programs funded under one of the 19 statutes or regulations specified in Appendix A of OPM's Standards for a Merit System of Personnel Administration (5 C.F.R. 900, Subpart F).

6. Will comply with all Federal statutes relating to nondiscrimination. These include but are not limited to: (a) Title VI of the Civil Rights Act of 1964 (P.L. 88-352) which prohibits discrimination on the basis of race, color or national origin; (b) Title IX of the Education Amendments of 1972, as amended (20 U.S.C. §§1681-1683, and 1685-1686), which prohibits discrimination on the basis of sex; (c) Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. §794), which prohibits discrimination on the basis of handicaps; (d) the Age Discrimination Act of 1975, as amended (42 U.S.C. §§6101-6107), which prohibits discrimination on the basis of age; (e) the Drug Abuse Office and Treatment Act of 1972 (P.L. 92-255), as amended, relating to nondiscrimination on the basis of drug abuse; (f) the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (P.L. 91-616), as amended, relating to nondiscrimination on the basis of alcohol abuse or alcoholism; (g) §§523 and 527 of the Public Health Service Act of 1912 (42 U.S.C. §§290 dd-3 and 290 ee 3), as amended, relating to confidentiality of alcohol and drug abuse patient records; (h) Title VIII of the Civil Rights Act of 1968 (42 U.S.C. §§3601 et seq.), as amended, relating to nondiscrimination in the sale, rental or financing of housing; (i) any other nondiscrimination provisions in the specific statute(s) under which application for Federal assistance is being made; and, (j) the requirements of any other nondiscrimination statute(s) which may apply to the application.

7. Will comply, or has already complied, with the requirements of Titles II and III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (P.L. 91-646) which provide for fair and equitable treatment of persons displaced or whose property is acquired as a result of Federal or federally-assisted programs. These requirements apply to all interests in real property acquired for project purposes regardless of Federal participation in purchases.

8. Will comply, as applicable, with provisions of the Hatch Act (5 U.S.C. §§1501-1508 and 7324-7328) which limit the political activities of employees whose principal employment activities are funded in whole or in part with Federal funds.

9. Will comply, as applicable, with the provisions of the Davis-Bacon Act (40 U.S.C. §§276a to 276a-7), the Copeland Act (40 U.S.C. §276c and 18 U.S.C. §874), and the Contract Work Hours and Safety Standards Act (40 U.S.C. §§327-333), regarding labor standards for federally-assisted construction subagreements.

10. Will comply, if applicable, with flood insurance purchase requirements of Section 102(a) of the Flood Disaster Protection Act of 1973 (P.L. 93-234) which requires recipients in a special flood hazard area to participate in the program and to purchase flood insurance if the total cost of insurable construction and acquisition is $10,000 or more.

11. Will comply with environmental standards which may be prescribed pursuant to the following: (a) institution of environmental quality control measures under the National Environmental Policy Act of 1969 (P.L. 91-190) and Executive Order (EO) 11514; (b) notification of violating facilities pursuant to EO 11738; (c) protection of wetlands pursuant to EO 11990; (d) evaluation of flood hazards in floodplains in accordance with EO 11988; (e) assurance of project consistency with the approved State management program developed under the Coastal Zone Management Act of 1972 (16 U.S.C. §§1451 et seq.); (f) conformity of Federal actions to State (Clean Air) Implementation Plans under Section 176(c) of the Clean Air Act of 1955, as amended (42 U.S.C. §§7401 et seq.); (g) protection of underground sources of drinking water under the Safe Drinking Water Act of 1974, as amended (P.L. 93-523); and, (h) protection of endangered species under the Endangered Species Act of 1973, as amended (P.L. 93-205).

12. Will comply with the Wild and Scenic Rivers Act of 1968 (16 U.S.C. §§1271 et seq.) related to protecting components or potential components of the national wild and scenic rivers system.

13. Will assist the awarding agency in assuring compliance with Section 106 of the National Historic Preservation Act of 1966, as amended (16 U.S.C. §470), EO 11593 (identification and protection of historic properties), and the Archaeological and Historic Preservation Act of 1974 (16 U.S.C. §§469a-1 et seq.).

14. Will comply with P.L. 93-348 regarding the protection of human subjects involved in research, development, and related activities supported by this award of assistance.

15. Will comply with the Laboratory Animal Welfare Act of 1966 (P.L. 89-544, as amended, 7 U.S.C. §§2131 et seq.) pertaining to the care, handling, and treatment of warm blooded animals held for research, teaching, or other activities supported by this award of assistance.

16. Will comply with the Lead-Based Paint Poisoning Prevention Act (42 U.S.C. §§4801 et seq.) which prohibits the use of lead-based paint in construction or rehabilitation of residence structures.

17. Will cause to be performed the required financial and compliance audits in accordance with the Single Audit Act Amendments of 1996 and OMB Circular No. A-133, "Audits of States, Local Governments, and Non-Profit Organizations."

18. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program.

| SIGNATURE OF AUTHORIZED CERTIFYING OFFICIAL | TITLE |
|---|---|
| | |
| APPLICANT ORGANIZATION | DATE SUBMITTED |
| | |

**Standard Form 424B (Rev. 7-97) Back**

**U.S. DEPARTMENT OF THE INTERIOR**
**CERTIFICATIONS FOR FEDERAL ASSISTANCE**

PART A: Certifications Regarding Debarment, Suspension and Other Responsibility Matters - Primary Covered Transactions. Applies to all grantees and cooperators.

This certification is required by the regulations implementing Executive Order 12549, Debarment and Suspension, 43 CFR Part 12, Section 12.510, Participants' responsibilities. The regulations were published as Part VII of the May 25, 1988 Federal Register (pages 19160-19211). For further assistance in obtaining a copy of the regulations, contact the issuing office.

(a) The prospective primary participant certifies to the best of its knowledge and belief, that it and its principals: (1) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency; (2) have not within a 3-year period preceding this proposal been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (3) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph (a)(2) of this certification; and (4) have not within a 3-year period preceding this application/proposal had one or more public transactions (Federal, State or local) terminated for cause or default.

(b) Where the prospective primary participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

The prospective primary participant further agrees by submitting this proposal that it will include the following clause, without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions (see Appendix A of Subpart D of 43 CFR Part 12):

PART B: Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion - Lower Tier Covered Transactions.

(a) The prospective lower tier participant certifies, by submission of this proposal, that neither it nor its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any Federal department or agency.

(b) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

PART C: Certification Regarding Drug-Free Workplace. Alternate I. Applies to grantees other than individuals.

This certification is required by the regulations implementing the drug-free workplace requirements for Federal grant recipients under the Drug-Free Workplace Act of 1988 (43 CFR Part 12, Subpart D). A copy of the regulation is available from the issuing office.

A. The grantee certifies that it will or continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition; (b) Establishing an on-going drug-free awareness program to inform employees about (1) the dangers of drug abuse in the workplace; (2) the grantee's policy of maintaining a drug-free workplace; (3) any available drug counseling, rehabilitation, and employee assistance programs; and (4) the penalties that may be imposed upon employee for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will (1) abide by the terms of the statement; and (2) notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying the agency, in writing, within ten calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to every grant officer or other designee on whose grant activity the convicted employee was working, unless the Federal agency has designated a central point for the receipt of such notices. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted: (1) taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or (2) requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e) and (f).

B. The grantee may insert in the space provided below the site(s) for the performance of work done in connection with the specific grant;

Place of Performance (Street address, city, county, state, zip code)

________________________________________

________________________________________

________________________________________

Check ___ if there are workplaces on file that are not identified here.

PART D: Certification Regarding Drug-Free Workplace. Alternate II. Applies to grantees who are individuals.

This certification is required by the regulations implementing the drug-free workplace requirements for Federal grant recipients under the Drug-Free Workplace Act of 1988 (43 CFR Part 12, Subpart D). A copy of the regulation is available from the issuing office.

(a) The grantee certifies that, as a condition of the grant, he or she will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity with the grant;

(b) If convicted of a criminal drug offense resulting from a violation occurring during the conduct of any grant activity, he or she will report the conviction, in writing, within 10 calendar days of the conviction, to the grant officer or other designee, unless the Federal agency designates a central point for the receipt of such notices. When notice is made to such a central point, it shall include the identification number(s) of each affected grant.

Part E: Certification Regarding Lobbying - Certification for Contracts, Grants, Loans, and Cooperative Agreements. Applies to recipients of awards exceeding $100,000.

This certification is required by Section 1352, title 31, U.S. Code, entitled "Limitation on use of appropriated funds to influence certain Federal contracting and financial transactions."

**The undersigned certifies, to the best of his or her knowledge and belief, that:**

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The undersigned shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify accordingly.
This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

As the authorized certifying official, I hereby certify that the above specified certifications are true.

________________________________________
Signature

________________________________________
Typed name and title

________________________________________
Applicant/Recipient

**Appendix D -- Schedule of Costs**

| Professional | Amount | | | | |
|---|---|---|---|---|---|
| | Oct-05 | Nov-05 | Dec-05 | Jan-06 | Total |
| Sandy Johnigan ($475/hr) | | | | | |
| **Fees** | $ 7,600.00 | $ 18,050.00 | $ 21,850.00 | $ 29,877.50 | $ 77,377.50 |
| **Travel Expenses** | | $ - | | | $ - |
| Bland & Associates CPA | | | | | |
| **Fees** | $ | 10,045.00 | $ 13,073.75 | $ 14,503.75 | $ 37,622.50 |
| **Travel Expenses** | | | $ - | $ - | $ - |
| | | | **Total** | | **$115,000.00** |

# Budget Information — Non-Construction Programs

OMB Approval No. 0348-0044

**Section A - Budget Summary**

| Grant Program Function or Activity (a) | Catalog of Federal Domestic Assistance Number (b) | Estimated Unobligated Funds: Federal (c) | Estimated Unobligated Funds: Non-Federal (d) | New or Revised Budget: Federal (e) | New or Revised Budget: Non-Federal (f) | New or Revised Budget: Total (g) |
|---|---|---|---|---|---|---|
| 1. Cooperative Agreement | | $ 115,000.00 | $ | $ | $ | $ 115,000.00 |
| 2. | | | | | | |
| 3. | | | | | | 0.00 |
| 4. | | | | | | 0.00 |
| 5. Totals | | $ 115,000.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 115,000.00 |

**Section B - Budget Categories**

| 6. Object Class Categories | Grant Program, Function or Activity (1) | (2) | (3) | (4) | Total (5) |
|---|---|---|---|---|---|
| a. Personnel | $ | $ | $ | $ | $ 0.00 |
| b. Fringe Benefits | | | | | 0.00 |
| c. Travel | | | | | 0.00 |
| d. Equipment | | | | | 0.00 |
| e. Supplies | | | | | 0.00 |
| f. Contractual | 115,000.00 | | | | 115,000.00 |
| g. Construction | | | | | 0.00 |
| h. Other | | | | | 0.00 |
| i. Total Direct Charges (sum of 6a-6h) | 115,000.00 | | | | 115,000.00 |
| j. Indirect Charges | | | | | 0.00 |
| k. **Totals** (sum of 6i and 6j) | 115,000.00 | | | | 115,000.00 |
| 7. Program Income | $ | $ | $ | $ | $ 0.00 |

Previous Edition Usable



Authorized for Local Reproduction

**SF-424A** (Rev. 4-92)
Prescribed by OMB Circular A-102
Appendix E

**Section C - Non-Federal Resources**

| (a) Grant Program | (b) Applicant | (c) State | (d) Other Sources | (e) Totals |
|---|---|---|---|---|
| 8. | $ | $ | $ | $ 0.00 |
| 9. | | | | 0.00 |
| 10. | | | | 0.00 |
| 11. | | | | 0.00 |
| 12. Total (sum of lines 8 - 11) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

**Section D - Forcasted Cash Needs**

| | Total for 1st Year | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
|---|---|---|---|---|---|
| 13. Federal | $ 115,000.00 | $ | $ | $ 0.00 | $ 0.00 |
| 14. Non-Federal | 0.00 | | | | |
| 15. Total (sum of lines 13 and 14) | $ 115,000.00 | $ | $ | $ 0.00 | $ 0.00 |

**Section E - Budget Estimates of Federal Funds Needed for Balance of the Project**

| (a) Grant Program | Future Funding Periods (Years) | | | |
|---|---|---|---|---|
| | (b) First | (c) Second | (d) Third | (e) Fourth |
| 16. | $ | $ | $ | $ |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. Total (sum of lines 16-19) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

**Section F - Other Budget Information**

| | |
|---|---|
| 21. Direct Charges | 22. Indirect Charges |
| 23. Remarks | |

# FINANCIAL STATUS REPORT

*(Long Form)*

*(Follow instructions on the back)*

| | | | |
|---|---|---|---|
| 1. Federal Agency and Organizational Element to Which Report is Submitted | 2. Federal Grant or Other Identifying Number Assigned By Federal Agency | OMB Approval No. **0348-0039** | Page of pages |
| 3. Recipient Organization (Name and complete address, including ZIP code) | | | |
| 4. Employer Identification Number | 5. Recipient Account Number or Identifying Number | 6. Final Report ☐ Yes ☐ No | 7. Basis ☐ Cash ☐ Accrual |
| 8. Funding/Grant Period *(See instructions)* From: (Month, Day, Year) | To: (Month, Day, Year) | 9. Period Covered by this Report From: (Month, Day, Year) | To: (Month, Day, Year) |

| 10. Transactions: | I Previously Reported | II This Period | III Cumulative |
|---|---|---|---|
| a. Total outlays | | | 0.00 |
| b. Refunds, rebates, etc. | | | 0.00 |
| c. Program income used in accordance with the deduction alternative | | | 0.00 |
| d. Net outlays *(Line a, less the sum of lines b and c)* | 0.00 | 0.00 | 0.00 |
| **Recipient's share of net outlays, consisting of:** e. Third party (in-kind) contributions | | | 0.00 |
| f. Other Federal awards authorized to be used to match this award | | | 0.00 |
| g. Program income used in accordance with the matching or cost sharing alternative | | | 0.00 |
| h. All other recipient outlays not shown on lines e, f or g | | | 0.00 |
| i. Total recipient share of net outlays *(Sum of lines e, f, g and h)* | 0.00 | 0.00 | 0.00 |
| j. Federal share of net outlays *(line d less line i)* | 0.00 | 0.00 | 0.00 |
| k. Total unliquidated obligations | | | |
| l. Recipient's share of unliquidated obligations | | | |
| m. Federal share of unliquidated obligations | | | |
| n. Total Federal share *(sum of lines j and m)* | | | 0.00 |
| o. Total Federal funds authorized for this funding period | | | |
| p. Unobligated balance of Federal funds *(Line o minus line n)* | | | 0.00 |
| **Program income, consisting of:** q. Disbursed program income shown on lines c and/or g above | | | |
| r. Disbursed program income using the addition alternative | | | |
| s. Undisbursed program income | | | |
| t. Total program income realized *(Sum of lines q, r and s)* | | | 0.00 |

| | | | | |
|---|---|---|---|---|
| 11. Indirect Expense | a. Type of Rate *(Place "X" in appropriate box)* ☐ **Provisional** | ☐ **Predetermined** | ☐ **Final** | ☐ **Fixed** |
| | b. Rate | c. Base | d. Total Amount | e. Federal Share |

12. *Remarks: Attach any explanations deemed necessary or information required by Federal sponsoring agency in compliance with governing legislation.*

13. Certification: **I certify to the best of my knowledge and belief that this report is correct and complete and that all outlays and unliquidated obligations are for the purposes set forth in the award documents.**

| | |
|---|---|
| Typed or Printed Name and Title | Telephone (Area code, number and extension) |
| Signature of Authorized Certifying Official | Date Report Submitted April 19, 2006 |

Previous Edition Usable 269-104 Standard Form 269 (Rev. 7-97)

NSN 7540-01-012-4285 Prescribed by OMB Circulars A-102 and A-110

200-498 P.O. 139 (Face)

Appendix F
Page 1 of 2

FINANCIAL STATUS REPORT
(Long Form)

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Management and Budget, Paperwork Reduction Project (0348-0039), Washington, DC 20503.

**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE OFFICE OF MANAGEMENT AND BUDGET.**

Please type or print legibly. The following general instructions explain how to use the form itself. You may need additional information to complete certain items correctly, or to decide whether a specific item is applicable to this award. Usually, such information will be found in the Federal agency's grant regulations or in the terms and conditions of the award (e.g., how to calculate the Federal share, the permissible uses of program income, the value of in-kind contributions, etc.). You may also contact the Federal agency directly.

| Item | Entry |
|---|---|
| 1, 2 and 3. | Self-explanatory. |
| 4. | Enter the Employer Identification Number (EIN) assigned by the U.S. Internal Revenue Service. |
| 5. | Space reserved for an account number or other identifying number assigned by the recipient. |
| 6. | Check *yes* only if this is the last report for the period shown in item 8. |
| 7. | Self-explanatory. |
| 8. | Unless you have received other instructions from the awarding agency, enter the beginning and ending dates of the current funding period. If this is a multi-year program, the Federal agency might require cumulative reporting through consecutive funding periods. In that case, enter the beginning and ending dates of the grant period, and in the rest of these instructions, substitute the term "grant period" for "funding period." |
| 9. | Self-explanatory. |
| 10. | The purpose of columns, I, II, and III is to show the effect of this reporting period's transactions on cumulative financial status. The amounts entered in column I will normally be the same as those in column III of the previous report *in the same funding period*. If this is the first or only report of the funding period, leave columns I and II blank. If you need to adjust amounts entered on previous reports, footnote the column I entry on this report and attach an explanation. |
| 10a. | Enter total gross program outlays. Include disbursements of cash realized as program income if that income will also be shown on lines 10c or 10g. Do not include program income that will be shown on lines 10r or 10s.<br><br>For reports prepared on a cash basis, outlays are the sum of actual cash disbursements for direct costs for goods and services, the amount of indirect expense charged, the value of in-kind contributions applied, and the amount of cash advances and payments made to subrecipients. For reports prepared on an accrual basis, outlays are the sum of actual cash disbursements for direct charges for goods and services, the amount of indirect expense incurred, the value of in-kind contributions applied, and the net increase or decrease in the amounts owed by the recipient for goods and other property received, for services performed by employees, contractors, subgrantees and other payees, and other amounts becoming owed under programs for which no current services or performances are required, such as annuities, insurance claims, and other benefit payments. |
| 10b. | Enter any receipts related to outlays reported on the form that are being treated as a reduction of expenditure rather than income, and were not already netted out of the amount shown as outlays on line 10a. |
| 10c. | Enter the amount of program income that was used in accordance with the deduction alternative. |
| Note: | Program income used in accordance with other alternatives is entered on lines q, r, and s. Recipients reporting on a cash basis should enter the amount of cash income received; on an accrual basis, enter the program income earned. Program income may or may not have been included in an application budget and/or a budget on the award document. If actual income is from a different source or is significantly different in amount, attach an explanation or use the remarks section. |
| 10d, | e, f, g, h, i and j. Self-explanatory. |
| 10k. | Enter the total amount of unliquidated obligations, including unliquidated obligations to subgrantees and contractors.<br><br>Unliquidated obligations on a cash basis are obligations incurred, but not yet paid. On an accrual basis, they are obligations incurred, but for which an outlay has not yet been recorded.<br><br>Do not include any amounts on line 10k that have been included on lines 10a and 10j.<br><br>On the final report, line 10k must be zero. |
| 10l. | Self-explanatory. |
| 10m. | On the final report, line 10m must also be zero. |
| 10n, | o, p, q, r, s and t. Self-explanatory. |
| 11a. | Self-explanatory. |
| 11b. | Enter the indirect cost rate in effect during the reporting period. |
| 11c. | Enter the amount of the base against which the rate was applied. |
| 11d. | Enter the total amount of indirect costs charged during the report period. |
| 11e. | Enter the Federal share of the amount in 11d. |
| Note: | If more than one rate was in effect during the period shown in item 8, attach a schedule showing the bases against which the different rates were applied, the respective rates, the calendar periods they were in effect, amounts of indirect expense charged to the project, and the Federal share of indirect expense charged to the project to date. |

# Exhibit D

# Filed Separately Under Seal